UNITED STATES OF AMERICA
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR 05 98 T Criminal No. |
| v. | : | 26 U.S.C. §§ 7201 and 7206(1), 18 U.S.C. §§ 1341, 1343 and 1344. |
| RICHARD HATCH | : | |

**INDICTMENT**

The Grand Jury charges that:

**COUNT 1**

1. At all times relevant to this Indictment the defendant, RICHARD HATCH, was a resident of Rhode Island.

2. On or about November 19, 2002, defendant RICHARD HATCH signed and caused to be filed with the Internal Revenue Service ("IRS"), a 2000 U.S. Individual Income Tax Return, Form 1040, on his behalf. That return declared defendant HATCH's total income in 2000 to be -$41,087 and sought a refund from the United States of $4,483 in taxes paid. In signing and filing his 2000 income tax return, defendant RICHARD HATCH knowingly and willfully failed to declare the following three sources of his income: (i) approximately $1,010,000 in taxable income that defendant HATCH received from Survivor Entertainment Group in August 2000, (ii) approximately $18,708.50 in rental income that defendant HATCH received from tenants of 21 Annandale Road, Newport, Rhode Island, from January 2000 through August 2000, and (iii) approximately

$25,000 in income that was paid by Chambers Communications Corporation to Horizon Bound in December 2000 and used by defendant HATCH for personal expenses.

A. SURVIVOR INCOME

3. On or about January 25, 2000, the defendant, RICHARD HATCH, applied to be a contestant on a television show called "Survivor," which was to be broadcast on the CBS television network. The "Survivor" television series featured sixteen individuals who competed against one another for a monetary prize of one million dollars ($1,000,000).

4. From on or about March 1, 2000, through on or about April 15, 2000, the "Survivor" show was filmed on location on the island of Pulau Tiga off the coast of Borneo.

5. On or about August 23, 2000, the finale of "Survivor" aired on CBS. It was agreed that defendant HATCH would be paid $10,000 by Survivor Entertainment Group for his appearance on this finale show. During the show, it was announced that defendant RICHARD HATCH had won the competition and the corresponding monetary prize of $1,000,000 (one million dollars).

6. On or about August 18, 2000, Survivor Entertainment Group prepared two checks payable to defendant RICHARD HATCH in the amounts of $1,000,000 and $10,000 respectively. On or about August 29, 2000, defendant RICHARD HATCH deposited the $1,000,000 check into his personal bank account located at Newport

Federal Savings Bank, Newport, Rhode Island. He endorsed the $10,000 check and provided it to Downes Construction, Inc. as partial payment for renovation work that Downes Construction, Inc. was conducting on property owned by defendant RICHARD HATCH.

7. During calendar year 2001, Survivor Entertainment Group sent to defendant RICHARD HATCH and filed with the IRS an IRS form 1099-MISC, in which it declared that defendant RICHARD HATCH had received $1,010,000 in income from Survivor Entertainment Group during calendar year 2000.

8. In or about March 2001, defendant RICHARD HATCH retained the services of an accounting firm (the "Firm") in Newport, Rhode Island, to complete his tax return for calendar year 2000. Along with numerous other documents, defendant RICHARD HATCH provided the Firm with a copy of the aforementioned IRS form 1099-MISC, which denoted that he had received $1,010,000 in income from Survivor Entertainment Group. The Firm prepared an individual tax return for defendant RICHARD HATCH for the calendar year 2000, which included the $1,010,000 in income that defendant HATCH received from Survivor Entertainment Group. The return prepared by the Firm concluded that defendant RICHARD HATCH owed the United States $441,501 in taxes for calendar year 2000, comprised of $374,831 in taxes owed, and $66,670 in interest and penalties.

9. On or about November 20, 2001, a member of the Firm met with defendant RICHARD HATCH and handed him the year 2000 income tax return that had been

prepared by the Firm, indicating that defendant HATCH owed the United States $441,501. Defendant RICHARD HATCH told a member of the Firm that he would file the return with the IRS. In fact, defendant HATCH never filed this 2000 individual tax return with the IRS.

10. In or about December 2001, defendant RICHARD HATCH hired another accountant, a self-employed accountant (the "Accountant") in Middletown, Rhode Island, to complete his individual tax return for calendar year 2000. Defendant HATCH provided the Accountant with a copy of the aforementioned IRS form 1099-MISC, which denoted that defendant HATCH had received $1,010,000 in income from Survivor Entertainment Group. Defendant RICHARD HATCH further advised the Accountant that he owned a piece of rental property that was located on 21 Annandale Road, Newport, Rhode Island, but stated that he had no rental income from this property during the year 2000.

11. On or about March 1, 2002, the Accountant handed defendant RICHARD HATCH a year 2000 individual tax return the Accountant prepared on defendant HATCH's behalf. This return, which included the "Survivor" winnings but did not include other sources of income that were listed on the 2000 return prepared by the Firm, determined that defendant RICHARD HATCH owed the IRS $234,807 in taxes on income he received during the year 2000. On or about March 1, 2002, defendant RICHARD HATCH told the Accountant that he would file with the IRS the year 2000

return the Accountant had prepared. In fact, defendant HATCH never filed this 2000 individual tax return with the IRS.

12. In or about the Fall of 2002, defendant RICHARD HATCH told the Accountant that he wanted to know what his tax liability would have been for the year 2000 had he not received the Survivor winnings. At defendant HATCH's request, the Accountant prepared an individual tax return for the year 2000 which did not include the $1,010,000 in income that defendant HATCH received from Survivor Entertainment Group. This return concluded that without the $1,010,000 in income, defendant HATCH would have been due a refund of $4,483 from the United States.

13. On or about November 19, 2002, the Accountant handed defendant HATCH the aforementioned year 2000 tax return that did not include his "Survivor" winnings and advised defendant HATCH, both orally and in writing, that this tax return was for informational purposes only and was not to be filed with the IRS. The Accountant did not sign this return. Defendant HATCH agreed orally and in writing that this return was for informational purposes only and was not to be filed with the IRS.

14. On or about November 19, 2002, defendant RICHARD HATCH took possession of the aforementioned 2000 individual tax return, which did not include any of his "Survivor" winnings. Defendant RICHARD HATCH then signed this return and filed it with the IRS.

B. RENTAL INCOME

15. At all times relevant to this Indictment, the defendant, RICHARD HATCH, was the owner of property located at 21 Annandale Road, Newport, Rhode Island.

16. From in or about January 2000 through in or about August 2000, defendant RICHARD HATCH rented the property located at 21 Annandale Road, Newport, Rhode Island, to a number of tenants and received a total of approximately $18,708.50 in rental payments. Defendant HATCH did not declare any of this rental income on his 2000 U.S. Individual Income Tax Return, Form 1040, that he filed with the IRS.

C. CHAMBERS COMMUNICATIONS INCOME

17. Chambers Communications Corporation ("Chambers Communications") was a production company located in Eugene, Oregon. In the Fall 2000, Chambers Communications and FOR GOODNESS SAKE! LLC. were involved in the production of a pilot for a television show called "FOR GOODNESS SAKE!."

18. In or around the Fall of 2000, defendant RICHARD HATCH met with a representative of FOR GOODNESS SAKE! LLC. concerning defendant HATCH's possible appearance on the pilot of the television show "FOR GOODNESS SAKE!." During this meeting, the representative told HATCH that the purposes of this show were to promote the good work charities do and to raise awareness and money for good causes.

19. On or about November 20, 2000, Chambers Communications, acting on behalf of FOR GOODNESS SAKE! LLC., sent to defendant RICHARD HATCH a proposed

agreement concerning the filming of the pilot for the show. According to the agreement, in exchange for defendant HATCH's appearance as a guest on the pilot episode, either FOR GOODNESS SAKE! LLC or Chambers Communications agreed to pay $25,000 to a 501(c)(3) non-profit charity of defendant HATCH's choice. Defendant HATCH elected that the $25,000 be paid to a purported 501(c)(3) non-profit charity called Horizon Bound. On or about November 27, 2000, defendant HATCH sent an executed version of this agreement back to Chambers Communications.

20. On or about December 12, 2000, defendant HATCH caused Articles of Incorporation to be filed with the Office of the Secretary of State for the State of Rhode Island to establish a non-profit corporation named Horizon Bound.

21. On or about December 6, 2000, defendant HATCH entered into a second agreement with FOR GOODNESS SAKE! LLC. This agreement also provided that, in exchange for HATCH's appearance on the show, a $25,000 charitable contribution would be made to Horizon Bound, a purported 501(c)(3) non-profit charity chosen by defendant HATCH.

22. On or about December 7, 2000, according the aforementioned agreements, defendant HATCH appeared as a guest in the production of the pilot of FOR GOODNESS SAKE!.

23. On or about December 8, 2000, Chambers Communications issued a $25,000 check payable to HORIZON BOUND. On or about December 11, 2000, this check was

mailed to defendant HATCH.

24. On or about December 18, 2000, defendant RICHARD HATCH endorsed this $25,000 check and deposited it into his personal bank account located at People's Credit Union, Newport, Rhode Island. Prior to depositing this check into his personal account, defendant HATCH altered the check so as to add the name "RICHARD HATCH" as an additional payee on the check.

25. From on or about December 26, 2000, through on or about February 9, 2001, defendant RICHARD HATCH proceeded to spend, on personal expenses, all of the $25,000 that had been paid by Chambers Communications to Horizon Bound. None of the $25,000 paid to Horizon Bound by Chambers Communications was spent by defendant RICHARD HATCH on any charitable purpose.

26. As of December 2000, Horizon Bound had not received tax-exempt status as a non-profit charitable organization under section 501(c)(3) of the Internal Revenue Code.

27. Despite the fact that defendant RICHARD HATCH received the aforementioned $25,000 from Chambers Communications and spent it on personal expenses, defendant HATCH did not declare this $25,000 on his 2000 U.S. Individual Income Tax Return, Form 1040, that he filed with the IRS.

28. On or about November 19, 2002, in the District of Rhode Island, defendant RICHARD HATCH, a resident of Rhode Island, did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for

the calendar year 2000, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was filed with the Internal Revenue Service, wherein he stated that his taxable income for the said calendar year was the sum of -$41,087, and sought a refund in the sum of $4,483, whereas, as he then and there well knew and believed, his taxable income for the said calendar year was substantially in excess of that heretofore stated and that upon said additional taxable income a substantial tax was due and owing to the United States of America.

All in violation of Title 26, United States Code, Section 7201.

**COUNT 2**

1. The grand jury realleges and incorporates by this reference paragraph 1 of Count One of this Indictment in its entirety as though fully set forth herein.

2. On or about October 9, 2002, defendant RICHARD HATCH signed and caused to be filed with the Internal Revenue Service ("IRS"), a 2001 U.S. Individual Tax Return, Form 1040, on his behalf. That return declared defendant HATCH's total income in 2001 to be $228,077 and sought a refund from the United States of $43,296 in taxes paid. In signing and filing his 2001 income tax return, defendant RICHARD HATCH knowingly and willfully failed to declare the following six sources of his income: (i) approximately $326,540 in income that was paid by Entercom, Boston, LLC.

("Entercom") to Tri-Whale Enterprises, Inc. between March and December 2001 as compensation for defendant HATCH's services as a radio personality, (ii) approximately $9,396.40 in rental income that defendant HATCH received from tenants of 21 Annandale Road, Newport, Rhode Island, from September 2001 through December 2001, (iii) approximately $27,074.40 in income, representing the value of a General Motors Pontiac Aztec vehicle that was given to defendant HATCH in February 2001 as part of defendant HATCH's prize for winning the "Survivor" show, (iv) approximately $1,000 in income that was paid by East Boston Savings Bank to Horizon Bound in April 2001 and used by defendant HATCH for his personal expenses, (v) approximately $500 in income that was paid by CAM Media and Graphics to Horizon Bound in April 2001 and used by defendant HATCH for his personal expenses, and (vi) approximately $10,000 in income that was paid by Weakest Link Productions, Inc. to Horizon Bound in August 2001 and used by defendant HATCH for his personal expenses.

A. RADIO STATION INCOME

3. On or about January 23, 2001, defendant RICHARD HATCH entered into an employment agreement with Entercom, which was doing business as WQSX-FM, a radio station broadcasting from Boston, Massachusetts. Pursuant to the terms of the employment agreement, Entercom agreed to employ defendant RICHARD HATCH as an on-air co-host of "The Wilde Show," and to pay him a semi-monthly salary of $20,833.33.

4. On or about March 8, 2001, defendant HATCH caused Articles of Incorporation to be filed with the Office of the Secretary of State for the State of Delaware to establish an S-Corporation named Tri-Whale Enterprises, Inc. An S-Corporation is a flow through corporation, which means that any profit or loss flows from the corporation to the shareholder(s). The shareholder(s) is the taxpayer who is required to pay the taxes on any profit earned by the S-Corporation. Defendant RICHARD HATCH was the sole shareholder in Tri-Whale Enterprises, Inc.

5. On or about April 10, 2001, defendant RICHARD HATCH, acting as an agent for Tri-Whale Enterprises, Inc., entered into a modified agreement with Entercom. Pursuant to the terms of this agreement, defendant RICHARD HATCH was to continue to serve as co-host of The Wilde Show. In exchange, Entercom agreed to pay Tri-Whale Enterprises, Inc. a total amount of $179,807.82 for the period from March 16, 2001, through July 25, 2001. In addition, barring termination of the agreement, Entercom further agreed to pay Tri-Whale Enterprises, Inc. semi-monthly compensation in the amount of $20,833.33 for the six month period from July 26, 2001 through January 25, 2002.

6. Between approximately January 26, 2001, and approximately December 2001, defendant RICHARD HATCH served as a co-host of the Wilde Show.

7. From on or about January 26, 2001, through on or about March 15, 2001, in payment for defendant HATCH's services as an on-air personality, Entercom paid defendant RICHARD HATCH approximately $70,232.68.

8. From on or about April 16, 2001, through on or about December 7, 2001, in payment for defendant HATCH's services as an on-air personality, Entercom paid Tri-Whale Enterprises, Inc. approximately $326,540.

9. The payments from Entercom to Tri-Whale Enterprises, Inc. were each deposited into a bank account in the name of Tri-Whale Enterprises, Inc. at Newport Federal Savings Bank, Newport, Rhode Island. Defendant RICHARD HATCH had sole signature authority over this bank account. Following the deposit of the payments from Entercom, most of the funds were transferred from the Tri-Whale Enterprises, Inc. bank account into defendant HATCH's personal bank account, also located at Newport Federal Savings Bank, Newport, Rhode Island.

10. Defendant RICHARD HATCH, as the sole shareholder of the S-Corporation Tri-Whale Enterprises, Inc., was obligated to report on his 2001 United States Individual Tax Return all of the ordinary income earned by Tri-Whale Enterprises, Inc. in 2001. In fact, defendant RICHARD HATCH did not report on his 2001 individual return the approximately $326,540 in income that was paid by Entercom to Tri-Whale Enterprises, Inc. between April and December 2001.

11. On or about October 1, 2002, defendant RICHARD HATCH signed and caused to be filed with the Internal Revenue Service, a 2001 U.S. Income Tax Return for an S-Corporation, Form 1120-S, on behalf of Tri-Whale Enterprises, Inc.. Defendant HATCH signed the return as President of Tri-Whale Enterprises, Inc.. That return declared Tri-Whale Enterprises, Inc.'s total income in 2001 to be $68,173. The return did not include the approximately $326,540 in income that was paid by Entercom to Tri-Whale Enterprises, Inc. between April and December 2001 as compensation for defendant HATCH's services as an on-air personality.

B. <u>RENTAL INCOME</u>

12. At all times relevant to this Indictment the defendant, RICHARD HATCH, was the owner of property located at 21 Annandale Road, Newport, Rhode Island.

13. From in or about September 2001 through in or about December 2001, defendant RICHARD HATCH rented the property located at 21 Annandale Road, Newport, Rhode Island, to tenants and received a total of approximately $9,396.40 in rental payments. Defendant HATCH did not declare any of this rental income on his 2001 U.S. Individual Income Tax Return, Form 1040, that he filed with the IRS.

C. <u>GENERAL MOTORS PONTIAC AZTEC</u>

14. In addition to the financial monetary prize, RICHARD HATCH's also received an automobile for winning the "Survivor" show.

15. On or about February 27, 2001, defendant RICHARD HATCH went to Barry Pontiac Buick GMC, a General Motors dealership located at 250 W. Main Road, Middletown, Rhode Island, and took title and possession of his automobile prize, a 2001 Pontiac Aztec valued at $27,074.40.

16. During calendar year 2002, General Motors sent to defendant RICHARD HATCH and filed with the IRS an IRS Form 1099-MISC, in which it declared that defendant RICHARD HATCH had received $27,074.40 in income from General Motors during calendar year 2001. The reported income represented the value of the Pontiac Aztec that General Motors supplied to defendant HATCH on or about February 27, 2001.

17. Defendant HATCH did not declare any of this income, represented by the $27,074.40 value of the Pontiac Aztec, on his 2001 U.S. Individual Income Tax Return, Form 1040, that he filed with the IRS.

D. CAM MEDIA and EAST BOSTON SAVINGS BANK INCOME

18. CAM Media and Graphics ("CAM Media") was an advertising company located in Lynnfield, Massachusetts. One of its clients was East Boston Savings Bank.

19. In Spring 2001, CAM Media arranged for defendant RICHARD HATCH to appear as a speaker at the annual meeting of East Boston Savings Bank, which took place on or about April 17, 2001.

20. Following defendant HATCH's appearance at the annual meeting, representatives of both CAM Media and East Boston Savings Bank decided to make charitable contributions to Horizon Bound.

21. On or about April 23, 2001, CAM Media issued a check in the amount of $500 payable to Horizon Bound. On or about April 25, 2001, defendant RICHARD HATCH deposited this check into a personal bank account which he maintained at People's Credit Union, located in Middletown, Rhode Island.

22. Following the deposit of the $500 from CAM Media into his personal bank account, defendant RICHARD HATCH spent these funds on personal expenses, and not for any charitable purpose.

23. On or about April 24, 2001, East Boston Savings Bank issued a check in the amount of $1,000 payable to Horizon Bound. On or about May 21, 2001, defendant RICHARD HATCH opened a bank account at Newport Federal Savings Bank in the name of Horizon Bound, and deposited this $1,000 check as the initial deposit into the

account.

24. Following the deposit of the $1,000 from East Boston Savings Bank into the Horizon Bound Bank account at Newport Federal Savings Bank, defendant RICHARD HATCH spent these funds on personal expenses, and not for any charitable purpose.

25. Despite the fact that defendant RICHARD HATCH received the aforementioned $1,500 from CAM Media and East Boston Savings Bank and spent the money on personal expenses, defendant HATCH did not declare this $1,500 on his 2001 U.S. Individual Income Tax Return, Form 1040, that he filed with the IRS.

E. WEAKEST LINK INCOME

26. Weakest Link Productions, Inc. ("Weakest Link Productions") was a company that produced a television show called "The Weakest Link." On or about April 12, 2001, defendant RICHARD HATCH executed a Celebrity Contestant Release Agreement with Weakest Link Productions. According to the terms of this agreement, defendant HATCH agreed to participate as a contestant in an episode of The Weakest Link, which was to be broadcast on the NBC television network. In exchange, Weakest Link Productions agreed to pay defendant HATCH a small fee and to make a donation of ten thousand dollars ($10,000) to a charity chosen by defendant HATCH. Defendant RICHARD HATCH selected Horizon Bound, Inc. as the charity to which the $10,000 payment would be made.

27. On or about April 14, 2001, an episode of The Weakest Link show was filmed, in which defendant RICHARD HATCH was one of the contestants.

28. On or about June 11, 2001, defendant RICHARD HATCH caused a facsimile transmission ("fax") to be sent from his home in Middletown, Rhode Island, to a representative of NBC located in Los Angeles, California, consisting of a W-9 Request for Taxpayer Identification Number and Certification. The faxed document bears the forged signature of Ralph Magee.

29. On or about July 30, 2001, the defendant RICHARD HATCH caused a faxed document to be sent from his home in Middletown, Rhode Island, to a representative of NBC located in Los Angeles, California, stating that Horizon Bound is still a nonprofit organization. The faxed document bears the forged signature of Ralph Magee.

30. On or about August 10, 2001, pursuant to the Celebrity Contestant Release Agreement, Weakest Link Productions, Inc. issued a check in the amount of $10,000 payable to Horizon Bound, Inc. On or about August 17, 2001, defendant RICHARD HATCH deposited this check into a bank account in the name of Horizon Bound that he had established at Newport Federal Savings Bank, Newport, Rhode Island.

31. On or about September 24, 2001, defendant RICHARD HATCH wrote a $10,000 check from the Horizon Bound account to a construction company that was providing construction services to defendant HATCH at his personal residence. None of the $10,000 paid to Horizon Bound by Weakest Link Productions was spent for any

charitable purpose.

32. Despite the fact that defendant RICHARD HATCH received the aforementioned $10,000 from Weakest Link Productions and spent it on personal expenses, defendant HATCH did not declare this $10,000 on his 2001 U.S. Individual Income Tax Return, Form 1040, that he filed with the IRS.

33. On or about October 9, 2002, in the District of Rhode Island, defendant RICHARD HATCH, a resident of Rhode Island, did willfully attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar year 2001, by preparing and causing to be prepared, and by signing and causing to be signed, a false and fraudulent U.S. Individual Income Tax Return, Form 1040, which was filed with the Internal Revenue Service (IRS), wherein he stated that his taxable income for the said calendar year was the sum of $228,077, and sought a refund in the sum of $43,296, whereas, as he then and there well knew and believed, his taxable income for the said calendar year was substantially in excess of that heretofore stated and that upon said additional taxable income a substantial additional tax was due and owing to the United States of America.

All in violation of Title 26, United States Code, Section 7201.

## COUNT 3

1. The grand jury realleges and incorporates by this reference paragraph 1 of Count One of this Indictment in its entirety as though fully set forth herein.

2. The grand jury realleges and incorporates by this reference paragraphs 3 through 9 of Count Two of this Indictment in its entirety as though fully set forth herein.

3. As detailed in paragraphs 3 through 9 of Count Two of the Indictment, on or about March 8, 2001, defendant RICHARD HATCH established an S-Corporation named Tri-Whale Enterprises, Inc. From on or about April 16, 2001, through on or about December 7, 2001, in payment for defendant HATCH's services as an on-air personality, Entercom paid Tri-Whale Enterprises, Inc. approximately $326,540. On or about October 1, 2002, defendant RICHARD HATCH signed and caused to be filed with the Internal Revenue Service, a 2001 U.S. Income Tax Return for Tri-Whale Enterprises, Inc., which return did not include the approximately $326,540 in income that was paid by Entercom to Tri-Whale Enterprises, Inc.

4. On or about October 1, 2002, defendant RICHARD HATCH, in the District of Rhode Island, did willfully make and subscribe a false U.S. Income Tax Return for an S-Corporation, Form 1120-S, on behalf of Tri-Whale Enterprises, Inc. for the calendar year 2001, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said income tax return he did not believe to be true and correct as to every material matter in that the

said return reported $68,173 in total income, on Form 1120-S, line item 6, whereas, defendant RICHARD HATCH, then and there well knew and believed that Tri-Whale Enterprises, Inc. earned income substantially in addition to the amount reported, in that it did not report the approximately $326,540 in income that was paid by Entercom to Tri-Whale Enterprises, Inc. between April 2001 and December 2001 as compensation for defendant HATCH's services as an on-air personality.

All in violation of 26 U.S.C. § 7206(1).

## COUNTS 4 - 5

### A. Introduction

1. The grand jury realleges and incorporates by this reference paragraph 1 of Count One of this Indictment in its entirety as though fully set forth herein.

### B. The Scheme

2. Beginning in or about November 2000, and continuing until in or about September 2001, in the District of Rhode Island, and elsewhere, the defendant, RICHARD HATCH, knowingly devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property from, donors of charitable contributions by means of false and fraudulent pretenses, representations and promises.

## C. Manner and Means

**Chambers Communications**

3. The grand jury realleges and incorporates by this reference paragraphs 17 through 26 Count One of this Indictment in its entirety as though fully set forth herein.

4. As detailed in paragraphs 17 through 26 of Count One of the Indictment, on or about December 8, 2000, in exchange for defendant RICHARD HATCH's appearance on a pilot episode of a television show, Chambers Communications made a charitable contribution by issuing a $25,000 check payable to Horizon Bound. On or about December 18, 2000, defendant HATCH altered the name of the payee on the check and deposited it into his personal bank account at People's Credit Union. Defendant HATCH subsequently spent these funds on personal expenses, and not for any charitable purposes.

**CAM Media & East Boston Savings Bank**

5. The grand jury realleges and incorporates by this reference paragraphs 18 through 24 Count Two of this Indictment in its entirety as though fully set forth herein.

6. As detailed in paragraphs 18 through 24 of Count Two of the Indictment, on or about April 23, 2001, CAM Media made a charitable contribution by issuing a $500 check payable to Horizon Bound, which the defendant RICHARD HATCH subsequently deposited into his personal bank account at People's Credit Union. On or about April 24, 2001, East Boston Savings Bank made a charitable contribution by issuing a $1,000 check payable to Horizon Bound, which the defendant RICHARD HATCH subsequently

deposited into a bank account in the name of "Horizon Bound" at Newport Federal Savings Bank. After these funds were deposited into the respective bank accounts, defendant HATCH spent these funds on personal expenses, and not for any charitable purposes.

**The Weakest Link**

7. The grand jury realleges and incorporates by this reference paragraphs 26 through 31 Count Two of this Indictment in its entirety as though fully set forth herein.

8. As detailed in paragraphs 26 through 31 of Count Two of the Indictment, on or about August 10, 2001, Weakest Link Productions, Inc. made a charitable contribution by issuing a $10,000 check payable to Horizon Bound, in exchange for defendant RICHARD HATCH's appearance on an episode of the television show The Weakest Link. On or about August 17, 2001, defendant RICHARD HATCH deposited this check into a bank account in the name of "Horizon Bound" at Newport Federal Savings Bank. Defendant HATCH subsequently spent these funds on personal expenses, and not for any charitable purposes.

## D. Execution of the Scheme

9. On or about the dates set forth below, in the District of Rhode Island, and elsewhere, for the purpose of executing the aforementioned scheme and artifice, and attempting to do so, the defendant, RICHARD HATCH, did knowingly cause to be transmitted in interstate and foreign commerce, writings, signs, signals, and sounds, according to the directions thereon, that is, by facsimile transmissions (fax), the material set forth below:

| **Count** | **Date** | **Material** |
|---|---|---|
| 4 | June 11, 2001 | Faxed document from the defendant, RICHARD HATCH, to a representative of NBC consisting of an IRS Form W-9, Request for Taxpayer Identification Number and Certification, for Horizon Bound, Inc. and bearing the forged signature of Ralph Magee. |
| 5 | July 30, 2001 | Faxed document from the defendant, RICHARD HATCH, to a representative of NBC, stating that Horizon Bound is a nonprofit organization and bearing the forged signature of Ralph Magee. |

Each in violation of 18 U.S.C. § 1343.

## COUNTS 6 - 9

### A. Introduction

1. The grand jury realleges and incorporates by this reference paragraph 1 of Count One of this Indictment in its entirety as though fully set forth herein.

### B. The Scheme

2. Beginning in or about November 2000, and continuing until in or about September 2001, in the District of Rhode Island, and elsewhere, the defendant, RICHARD HATCH, knowingly devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property from, donors of charitable contributions by means of false and fraudulent pretenses, representations and promises.

### C. Manner and Means

**Chambers Communications**

3. The grand jury realleges and incorporates by this reference paragraphs 3 and 4 of Counts Four and Five of this Indictment in their entirety as though fully set forth herein.

**CAM Media & East Boston Savings Bank**

4. The grand jury realleges and incorporates by this reference paragraphs 5 and 6 of Counts Four and Five of this Indictment in their entirety as though fully set forth herein.

**The Weakest Link**

5. The grand jury realleges and incorporates by this reference paragraphs 7 and 8 of Counts Four and Five of this Indictment in their entirety as though fully set forth herein.

**D. Execution of the Scheme**

6. On or about the dates set forth below, in the District of Rhode Island, and elsewhere, for the purpose of executing the aforementioned scheme and artifice, and attempting to do so, the defendant, RICHARD HATCH, did knowingly cause to be delivered by United States mail or a private or commercial interstate carrier, according to the directions thereon, and did knowingly take and receive from the United States mail or a private or commercial interstate carrier, the material set forth below:

| Count | Date | Material |
|---|---|---|
| 6 | December 11, 2000 | A $25,000 check from Chambers Communications Corp. payable to Horizon Bound sent to 21 Annandale Rd., Newport, R.I. |
| 7 | April 23, 2001 | A $500 check from CAM Media and Graphics payable to Horizon Bound sent to 102 Green End Ave., Middletown, R.I. |
| 8 | April 24, 2001 | A $1,000 check from East Boston Savings Bank payable to Horizon Bound sent to 102 Green End Ave., Middletown, R.I. |

| | | |
|---|---|---|
| 9 | August 10, 2001 | A $10,000 check from Weakest Link Productions, Inc., payable to Horizon Bound, Inc. sent to 102 Green End Ave., Middletown, R.I. |

Each in violation of 18 U.S.C. § 1341.

## COUNT 10

### Introduction

At all times relevant to this Indictment:

1. The defendant, RICHARD HATCH, was a resident of Rhode Island.

2. Defendant RICHARD HATCH maintained a personal checking account at People's Credit Union, account number 02-50-2747343.

3. People's Credit Union was a financial institution with its principal place of business located in Newport, Rhode Island, the deposits of which were federally insured.

### Scheme and Artifice to Defraud

4. On or about December 18, 2000, in the District of Rhode Island and elsewhere, the defendant, RICHARD HATCH, devised a scheme and artifice to defraud People's Credit Union, and to obtain monies and funds in the total amount of $25,000, owned by and under the custody and control of People's Credit Union, by means of false and fraudulent pretenses, representations, and promises.

## Object of the Scheme and Artifice

5. It was the object of the scheme and artifice to obtain approximately $25,000 from People's Credit Union by depositing a check from Chambers Communications Corporation into an account at People's Credit Union in which the payee was altered.

## Manner and Means

6. Chambers Communications Corporation ("Chambers Communications") was a production company located in Eugene, Oregon. In the Fall 2000, Chambers Communications and FOR GOODNESS SAKE! LLC. were involved in the production of a pilot for a television show called "FOR GOODNESS SAKE!."

7. In or around the Fall of 2000, defendant RICHARD HATCH met with a representative of FOR GOODNESS SAKE! LLC. concerning defendant HATCH's possible appearance on the pilot of the television show "FOR GOODNESS SAKE!." During this meeting, the representative told HATCH that the purposes of this show were to promote the good work charities do and to raise awareness and money for good causes.

8. On or about November 20, 2000, Chambers Communications, acting on behalf of FOR GOODNESS SAKE! LLC., sent to defendant RICHARD HATCH a proposed agreement concerning the filming of the pilot for the show. According to the agreement, in exchange for defendant HATCH's appearance as a guest on the pilot episode, either FOR GOODNESS SAKE! LLC or Chambers Communications agreed to pay $25,000 to a 501(c)(3) non-profit charity of defendant HATCH's choice. Defendant HATCH elected

that the $25,000 be paid to a purported 501(c)(3) non-profit charity called Horizon Bound. On or about November 27, 2000, defendant HATCH sent an executed version of this agreement back to Chambers Communications.

9. On or about December 6, 2000, defendant HATCH entered into a second agreement with FOR GOODNESS SAKE! LLC. This agreement also provided that, in exchange for HATCH's appearance on the show, a $25,000 charitable contribution would be made to Horizon Bound, a purported 501(c)(3) non-profit charity chosen by defendant HATCH.

10. On or about December 7, 2000, according the aforementioned agreements, defendant HATCH appeared as a guest in the production of FOR GOODNESS SAKE!.

11. On or about December 8, 2000, Chambers Communications issued a $25,000 check payable to Horizon Bound. On or about December 11, 2000, this check was mailed to defendant HATCH.

12. On or about December 18, 2000, defendant RICHARD HATCH endorsed this $25,000 check and deposited it into his personal bank account located at People's Credit Union, Newport, Rhode Island. Prior to depositing this check into his personal account, defendant HATCH altered the check so as to add the name "RICHARD HATCH" as an additional payee on the check.

**Execution of the Scheme**

13. On or about December 18, 2000, in the District of Rhode Island, the defendant, RICHARD HATCH, did knowingly and intentionally execute and attempt to execute the aforesaid scheme and artifice to defraud and to fraudulently obtain monies and funds owned and under the custody and control of People's Credit Union, by depositing a $25,000 check from Chambers Communications Corporation, on which the payee was altered, into his personal checking account at People's Credit Union.

All in violation of Title 18, United States Code, Section 1344.

ROBERT CLARK CORRENTE
United States Attorney

By: ANDREW J. REICH
Assistant U.S. Attorney

LEE H. VILKER
Assistant U.S. Attorney

GERARD B. SULLIVAN
Chief, Criminal Division

Dated: 9/8/05