**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | CR 05-98T |
| | : | |
| RICHARD HATCH | : | |

## GOVERNMENT'S MOTION TO PRECLUDE EXPERT TESTIMONY

The United States of America, by and through its undersigned attorneys, respectfully moves to preclude defendant from introducing expert testimony at trial. In support of this Motion, the government submits the attached Memorandum of Law.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

ANDREW J. REICH
Assistant U.S. Attorney

LEE H. VILKER
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

In hereby certify that on the 27th day of December, 2005, a copy of the within Government's Motion, was mailed by regular mail, postage prepaid, to the following:

John MacDonald, Esq.
One Turks Head Plaza
Suite 1440
Providence, R.I. 02903

Michael Minns, Esq.
9119 South Gessner
Suite One
Houston, TX 77074

Lisa M. Steele

**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | CR 05-98T |
| | : | |
| RICHARD HATCH | : | |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S MOTION TO PRECLUDE EXPERT TESTIMONY**

The United States of America, by and through its undersigned attorneys, respectfully submits this Memorandum of Law in Support of the Government's Motion to Preclude Expert Testimony.

On December 21, 2005, defense counsel notified the Government notice that the defense intended to call as an expert witness Daniel Urso ("Urso"), a Certified Public Accountant.[1] In a letter delineating the proposed areas of expert testimony (attached as Exhibit A), the defense identified five areas to which Urso will be testifying as a proposed expert. These areas are: "(a) the defendant's accounting and bookkeeping abilities are below normal, (b) it is a common experience to have tax problems when trauma occurs or an unusual change in business of income, (c) Mr. Hatch has been continuously attempting to resolve his tax problems by filing amended tax returns for 2000 and 2001, (d) an amended return cannot be completed at this time

[1] In waiting to provide the government with a summary of expert testimony until three weeks before trial, the defendant violated the Arraignment and Pretrial Discovery Order entered in this case by Magistrate Almond, which explicitly provides that the defendant is to disclose any summaries of expert testimony within five days of the government's disclosure of evidence. The government provided the defense with discovery on September 27, 2005. Defendant's violation of this order presents yet another reason to preclude the introduction of expert testimony.

because of the enormity of the records involved and the refusal of Jodi Rodriguez-Wallace, CPA to cooperate in any manner, [and] (e) the 2000 and 2001 tax returns submitted to Mr. Hatch by Jodi Rodriquez-Wallace, CPA were incorrect and incompetently prepared." None of these areas are the proper subject of expert testimony.

A. Legal Standard for Expert Testimony

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under Rule 702, "a proposed expert witness must be sufficiently qualified to assist the trier of fact, and [] his or her testimony must be relevant to the task at hand and rest on a reliable basis." United States v. Stokes, 388 F.3d 21, 26 (1st Cir. 2004), quoting United States v. Diaz, 300 F.3d 66, 73 (1st Cir. 2002). Rule 702 "imposes a gate-keeping function on the trial judge to ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." United States v. Rivera, 415 F.3d 162, 170 (1st Cir. 2005), quoting United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002) and Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993).

It is clear that expert testimony "must be relevant not only in the sense that all evidence must be relevant . . . but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." Stokes,

388 F.3d at 26, quoting Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) Finally, a trial court's decision to admit or exclude expert testimony is reviewed under an abuse of discretion standard. Diaz, 300 F.3d 74.

B. The Proposed Testimony of Urso Is Irrelevant, Outside the Scope of His Expertise, and Is Not the Product of Reliable Principles and Methods

Daniel Urso, the proposed expert witness, has been defendant's personal accountant since approximately 2003 (a period of time beyond the scope of the charged offenses). The defense has indicated that it intends to call Urso as an expert witness to testify concerning five distinct areas, including his personal opinion of the defendant's accounting abilities, the psychological effect trauma has on tax problems and defendant's conduct in attempting to resolve his tax problems. None of these areas are the proper subject of expert testimony under Rule 702.

The first proposed area of Urso's testimony is his apparent opinion that the defendant's accounting abilities are below normal. This testimony would amount to no more than Urso's personal opinion of the defendant, not an opinion based on any kind of facts, data or reliable principles and methods, as required under Rule 702. There are no principles, data or methods Urso could rely on to establish what constitute "normal" accounting abilities in the general population, much less any reasoned manner in which Urso, as an accountant, could provide any expertise concerning what innate or acquired abilities the defendant may or may not possess.

Moreover, the sole purpose of this testimony would apparently be to attempt to establish that defendant's accounting abilities were so inferior as to render him incapable of willfully filing false tax returns. Such testimony would be impermissible under Federal Rule of Evidence 704(b), which prohibits expert testimony concerning whether a criminal defendant has the

requisite mental state or condition constituting an element of the crime charged. In addition, it does not appear that Urso was even acquainted with the defendant during the relevant time period, and therefore cannot testify as to the defendant's abilities during the time in question.

The next area of proposed expert testimony is Urso's opinion that it is a common experience to have tax problems when trauma occurs or when there is an unusual change in business or income, and that allegedly traumatic events that took place in defendant's life. This testimony should be precluded because Urso, an accountant, appears to have no psychological training or experience from which he could possibly provide any expertise concerning the effect trauma may have on tax problems. See Barry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir. 1994) (when determining whether proposed expert is qualified, trial court must not examine qualifications in abstract, but must consider whether witness is qualified to answer specific questions relating to matters at issue). Moreover, Urso presumably has no firsthand knowledge of any traumatic events that may have taken place in defendant's personal life in the years before the defendant became his client. Permitting Urso to testify as to any such events, even if they had any relevance whatsoever, would therefore violate Federal Rule of Evidence 802, which prohibits the admission of hearsay.

Next, Urso is set to testify as to defendant's attempts to resolve his tax problems by filing amended returns. There is no dispute that the defendant has never filed amended returns for the tax years at issue here. What the defendant may have done following the filing of the false tax returns is clearly not the subject of expert testimony, which must be based on reliable facts, data and principles. Moreover, this testimony, which is factual in nature, has absolutely no relevance to any pertinent issue at trial. Any purported post-offense conduct undertaken by the defendant

to resolve his tax problems are completely irrelevant to the issue in this case, i.e., whether the defendant acted willfully when he filed his false 2000 and 2001 tax returns.

Next, the defense intends on having Urso testify that amended returns cannot be completed because of the enormity of the records involved and the purported refusal of defendant's prior accountant to cooperate. This testimony is, once again, factual in nature and represents another attempt to introduce new facts before the jury under the guise of expert testimony. There is no data, principles, or scientific methods underlying this testimony. Moreover, as mentioned above, this testimony is completely irrelevant. The reason why Mr. Hatch has failed to file amended returns is not an issue for this jury to consider. The only issues are whether the defendant knew that the returns he filed were false and whether he acted with an intent to evade his tax obligations.[2]

The final area of Urso's proposed expert testimony is his purported opinion that the tax returns prepared by Jodi Rodrigues-Wallis ("Rodrigues-Wallis") in 2000 and 2001 were incorrect and incompetently prepared. It is not clear from defendant's notice to which returns he is referring. Rodrigues-Wallis prepared two different returns for the year 2000. The first, which was completed on or about March 1, 2002, included as income the $1,010,000 defendant received from Survivor Entertainment Group. Rodrigues-Wallis handed this return to the defendant and instructed him to file it with the IRS. That return was never filed. Later that year,

---

[2] In addition to Urso's expert testimony, the defense has indicated in its notice that Urso will be called as a "summary witness" to summarize the trial testimony and exhibits. Since all of the areas of Urso's propose expert testimony should be precluded, he cannot possibly have any relevant testimony to provide as a "summary witness." Closing argument provides counsel with the opportunity to summarize the evidence in the manner it sees fit. Defendant should not be allowed to call a witness at trial for no purpose other than to summarize the evidence that has already been admitted.

upon defendant's request to learn what his tax liability would have been without the Survivor winnings, Rodrigues-Wallis prepared an "informational" return for Hatch which did not include those winnings. Rodrigues-Wallis instructed Hatch not to file that return. That return was, however, filed with the IRS in November 2002. In addition, Rodrigues-Wallis completed two 2001 tax returns for Hatch, one for Hatch individually and the other for the S-Corporation Tri-Whale Enterprises, Inc.

It is not clear from defendant's notice which of the aforementioned tax returns his expert believes to be inaccurate. (The parties all seem to agree that the 2000 return that was filed was inaccurate as the Survivor winnings were omitted.) No matter to which returns he is referring, Mr. Urso's opinion as to their accuracy is simply irrelevant. The jury will have to decide whether the defendant knowingly filed false tax returns, not whether Rodrigues-Wallis made any mistakes when she prepared any of the aforementioned tax returns. If the defendant wishes to testify that he did not file the first 2000 return prepared by Rodrigues-Wallis because he believed it to be inaccurate, he is, of course, free to do so since his subjective intent is at the heart of the case. An expert's belated opinion regarding the accuracy of any of the returns is not probative of defendant's state of mind at the time he filed the false returns. While we cannot be certain as to the purpose of this proposed testimony, it appears that it is being offered to show that defendant did not knowingly file false tax returns. If that is its purpose, such testimony would be further barred by Rule 704(b), which prohibits expert testimony on the subject of whether a criminal defendant had a mental state constituting an element of an the crime charged. In short, having the defendant's current accountant (Urso) offer an opinion concerning the accuracy of the returns prepared by his former accountant sheds no light whatsoever on any issue of relevance to this

case.[3]

For all of these reasons, the government respectfully requests this Court preclude the introduction of expert testimony by Daniel Urso, CPA.

Respectfully submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

ANDREW J. REICH
Assistant U.S. Attorney

LEE H. VILKER
Assistant U.S. Attorney

[3] The only relevant expert testimony Urso could possibly provide concerning the filed returns would be an opinion that no substantial tax was, in fact, due and owing. The defense has not indicated that Urso would so testify, presumably because it is indisputable that the inclusion of more than $1.3 million in unreported taxable income would lead to an additional substantial tax to the government.

## CERTIFICATE OF SERVICE

In hereby certify that on the 27th day of December, 2005, a copy of the within Government's Motion to Preclude Expert Testimony, was mailed by regular mail, postage prepaid, to the following:

John MacDonald, Esq.
One Turks Head Plaza
Suite 1440
Providence, R.I. 02903

Michael Minns, Esq.
9119 South Gessner
Suite One
Houston, TX 77074

/s/ [signature]