**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **V.** | : | **CR. NO. 05-98T** |
| | : | |
| **RICHARD HATCH** | : | |

**DEFENDANT'S OBJECTION TO GOVERNMENT'S REQUEST FOR TWO-LEVEL ENHANCEMENT FOR OBSTRUCTION OF JUSTICE**

Now comes the defendant, Richard Hatch, by and through counsel, and hereby objects to the Government's proposed enhancement for obstruction of justice. A memorandum of law in support of this motion is attached hereto.

Respectfully submitted,
Richard Hatch
By his attorneys,

Michael Minns /JM
Michael Louis Minns, Esq.
Michael Louis Minns, P.L.C.
9119 South Gessner, Suite One
Houston, TX 77074
(713) 777-0772
(713)-777-0453 (FAX)

Enid Williams /JM
Enid Williams, Esq.
Michael Louis Minns, P.L.C.
9119 South Gessner, Suite One
Houston, TX 77074
(713) 777-0772
(713)-777-0453 (FAX)

John E. MacDonald, Esq.
Larochelle & MacDonald, Inc.
One Turks Head Place, Suite 1440
Providence, Rhode Island 02903
(401) 421-1440
(401) 421-1442 (FAX)

**CERTIFICATION**

I hereby certify that on 5-9-06 a true copy of this document was delivered to A.U.S.A. Andrew Reich and A.U.S.A. Lee Vilker, Fleet Center, 50 Kennedy Plaza, Providence, RI 02903.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | CR. NO. 05-98T |
| | : | |
| RICHARD HATCH | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S OBJECTION TO GOVERNMENT'S REQUEST FOR TWO-LEVEL ENHANCEMENT FOR OBSTRUCTION OF JUSTICE**

Section 3C1.1 of the Sentencing Guidelines mandates a two-level enhancement where the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." US v. Dunnigan, 507 U.S. 87, 92 (1993); U.S. v. Hall, 434 F.3d 42, 61 (1st Cir. 2006); U.S. v. D'Andrea, 107 F.3d 949, 958 (1st Cir. 1997). Obstruction of justice under the guidelines can include perjury. D'Andrea, 107 F.3d at 958. When a court finds that the defendant has perjured himself, the guidelines mandate a sentence enhancement. U.S. v. Walker, 234 F.3d 780, 785 (1st Cir. 2000).

In determining what constitutes perjury, "a witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." Dunnigan, 507 U.S. at 94; U.S. v. Reynoso, 336 F.3d 46, 50 (1st Cir. 2003); D'Andrea, 107 F.3d at 958; U.S. v. Mckeeve, 131 F.3d 1, 15 (1st Cir. 1997). "Deliberately false testimony by a defendant constitutes obstruction, but

inadvertent falsity does not." Dunnigan, 507 U.S. at 94; U.S. v. O'Brien, 435 F.3d 36, 41 (1st Cir. 2006). In determining a sentence enhancement, a District Court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition. Dunnigan, 507 U.S. at 96.

## A. PERJURY AT TRIAL

### Jodi Rodrigues-Wallis

As the government correctly notes, Mr. Hatch's testimony as to various conversations between himself and Ms. Wallis was material to the central issue at trial, namely, whether he acted willfully when he filed the 2000 and 2001 tax returns. Although the government asserts that Hatch's testimony is blatantly false and directly contradicted by Wallis' testimony, there is no evidence in support of this proposition.

First, the assertion that Jodi Rodriguez-Wallis had no personal interest in the outcome of the case is incorrect. Ms. Wallis had entered into a non-prosecution agreement with the Government. (Tr. 1/18 at 68) Ms. Wallis knew that the returns she had prepared omitted taxable income. (Tr. 1/18 at 74) Still, she advised Mr. Hatch to file these returns (omitting an amount of $146,000) and then file an amended return when she had the correct numbers. (Tr. 1/18 at 71) A November 19, 2002 letter from Ms. Wallis to Mr. Hatch was introduced in which Ms. Wallis advised Mr. Hatch to file his 2000 tax return in a manner that would allow him as quickly as possible to eliminate the penalties and interest that were accruing at that time. (Tr. 1/18 at 74) Ms. Wallis additionally

admitted to taking the numbers directly from the IRS form letter rather than using her own. (Tr. 1/18 at 82-83) She then confirmed that it was even more likely that CBS paid the Survivor money because it was missing from both IRS generated forms (Tr. 1/18 at 83-84).

Ms. Wallis also noted that she never looked at the contract between CBS and Mr. Hatch and rather requested that Mr. Hatch contact them himself (Tr. 1/18 at 85). In her testimony before the Grand Jury, Wallis testified that she had never called Plotkin to verify any information or to find out whether a 2000 return had been filed because Hatch had instructed her not to contact Plotkin's firm. The government asserts that Hatch deliberately failed to disclose that a 2000 return had been filed by another firm. This assertion is completely false, especially when taken in light of Ms. Wallis' subsequent admission to the fact that she had called Plotkin's firm upon Hatch's disclosure and that Plotkin never called her back. (Tr. 1/18 at 97) She writes this off as a "minor detail".

Mr. Hatch's explanation as to why the year 2000 business income was not reported does not constitute perjury. Mr. Hatch testified that he provided Ms. Wallis with all the information in his possession. (Tr. 1/23 at 24) The government questions why she, having been given all of the documents pertaining to his 1099 income and 1099s themselves, would conclude that he had zero business income for the year 2000. Looking at the fact that the document pertaining to his income was ripped off, it is a possibility that the rest of the document was lost or dropped (Tr. 1/23 at 25). Finally, it was Mr. Hatch who advised Ms. Wallis as to each computer generated IRS form which listed these omitted business incomes to Mr. Hatch for the year 2000. (Tr. 1/18 at 76) If the

Government's assertion that Hatch lied about his other income is to be accepted, why is Mr. Hatch informing Ms. Wallis as to this income?

With respect to Hatch's testimony regarding whether he ever told Wallis if he had a separate business account for Tri-Whale, Ms. Wallis testified that "I asked him if there was a separate checking account, that he would have a check register that I could use to come up with the income and expense items, and he indicated that he did not have a separate business account." (Tr. 1/18 at 44). The government notes that this testimony was central to the 2001 tax evasion count as to Mr. Hatch's efforts to conceal his Tri-Whale account from Wallis and provided substantial evidence that he knew he had to declare the radio station income that was being deposited into that same account.

Mr. Hatch testified that because the Tri-Whale account was a savings account, he was unable to write checks from it. (Tr. 1/18 at 27) Mr. Hatch does not have a separate business checking account, only a business savings account. Therefore, he never once denied that the teller would, in the same transaction, transfer the funds from his savings account in the name of the corporation to his personal checking account and never once denied having a separate savings account for Tri-Whale (although, in fact, he did not have a separate personal checking account…the subject of Jodi's inquiry) (Tr. 1/23 at 46). If this were true, it would make little sense that Hatch provided Wallis with documentation concerning payments that some entities made to Tri-Whale in 2001; specifically in the amount of $68,173 (Tr. 1/23 at 48). He admits wholeheartedly that he owes taxes on the $320,000 in income from Entercom (Tr. 1/23 at 50) and reasons that because the check was made out from business to business, he received no 1099 and therefore failed to provide what he did not have.

Misrepresentations Concerning Richard Plotkin

The contradictions in testimony between Richard Plotkin and Mr. Hatch are not grounds for obstruction. Richard Poltkin testified that Mr. Hatch never expressed any doubt or concern about whether he was required to pay taxes on the winnings and indicated that there was no conversation or question raised about whether to include the winnings in the tax return. Mr. Hatch, on the other hand, testified that Mr. Plotkin was unwilling to look into the issue for him and he was "completely and utterly unavailable to me." (Tr. 1/20 at 174) "Mr. Plotkin didn't know anything that was going on with my tax returns and never interacted with me about them".

The rental income on Mr. Hatch's Annandale property listed as being $4,000 dollars was admittedly incorrect. Still, Mr. Hatch noted in his testimony that at first, he did not recall the property being rented out due to extensive renovations. After several phone calls from Ploktkin's firm, he recalled that it had been rented for a short period. He notes "there were two groups of five tenants who, both of which were there for parts of that year; I somehow assumed that they were one and didn't recall how many of those months they were there. The summer rental tenants I never even met, didn't even remember that they existed at the time I did this." (Tr. 1/20 at 186)… "I feel like my life was so complicated, that I forgot when the house was rented, and unintentionally told them initially that there was no rent." (Tr. 1/20 at 187) When he realized that he may have been incorrect, he knew that he had already provided the Plotkin firm with all his bank records and the firm had come up with the $4,000 number, so this number seemed plausible.

Misrepresentations Concerning the $25,000 Check from Chambers Communications

Mr. Hatch testified that he went into Peoples and indicated to the teller that he had no EIN number for the account for Horizon Bound and that Newport Federal wouldn't let him deposit it. He told her that he and Horizon Bound were essentially one in the same. Hatch doesn't recall if they indicated they would add his name onto the check (Tr. 1/23 at 62) but testified that he did not put his name on that check. It therefore must have been typed on by either the teller or the manager because he could not deposit it into the account without it.

The government contends that it is preposterous to believe that an employee of People's, on her own, and acting against bank policy, would alter the check so as to permit it to be deposited into Hatch's personal account. When looked at in the light of Hatch's explanation, the scenario is not all that preposterous. The fact that the manager initialed the front of the check makes it even more likely that he/she was there for Hatch's explanation and there to approve the deposit. Ms. Henderson, the teller who conducted this transaction, testified that she didn't recall specific banking transactions conducted on Mr. Hatch's behalf. (Tr. 1/23 at 193) Moreover, Mr. Hatch was acquitted of bank fraud as it relates to this transaction.

## B. FALSE INFORMATION TO A PROBATION OFFICER

If a defendant lies to a probation officer about certain things, it can be an obstruction of justice under the Guidelines. U.S. v. Scungio, 255 F.3d 11, 15 (1st Cir. 2001). An example of such an instance of conduct by the defendant is "providing

materially false information to a probation officer in respect to a pre-sentence or other investigation for the court." U.S. v. Parker, 32 F.3d 561 (1st Cir. 1994). Material information is that which would tend to influence or affect the determination of a sentence. U.S. v. Ima, 974 F.2d 1329 (1st Cir. 1992). The Government has the burden of proving willful obstruction of justice by a preponderance of the evidence. Parker, 32 F.3d 561.

While the First Circuit has held that the defendant's failure to disclose previous convictions from a probation officer is enough to warrant obstruction of justice, failing to disclose assets is not. U.S. v. St. Cyr, 977 F.2d 698 (1st Cir. 1992); U.S. v. Stergios, 37- F.Supp.2d 328, 330 (D.Me.). In Stergios, the Court held that defendant's failure to disclose assets does not fall squarely within the category of providing materially false information to a probation officer with respect to pre-sentence or other investigation for the court. Stergios, 370 F.Supp. at 330.

In this case, Mr. Hatch's failure to provide information relating to vacant lots in Nova Scotia and Michigan is akin to "providing incomplete or misleading information, not amounting to a material falsehood..." Mr. Hatch advised probation during the pre-sentence investigation that these lots were purchased at a tax sale and will eventually be sold at a future tax sale with all revenue going to the local governments. Their market value is essentially zero considering the lack of any buyers and the delinquent taxes owed on them. In addition, many of the Canadian properties abut the Sydney Tar ponds, the largest toxic waste site in North America. Under these circumstances, the enhancement for obstruction of justice does not apply. See id.

## CONCLUSION

For the foregoing reasons, the defendant, Richard Hatch, respectfully requests that this Honorable Court deny the Government's request for a 2-level adjustment for Obstruction of Justice.

Respectfully submitted,
Richard Hatch
By his attorneys,

Michael Louis Minns, Esq.
Michael Louis Minns, P.L.C.
9119 South Gessner, Suite One
Houston, TX 77074
(713) 777-0772
(713)-777-0453 (FAX)

Enid Williams, Esq.
Michael Louis Minns, P.L.C.
9119 South Gessner, Suite One
Houston, TX 77074
(713) 777-0772
(713)-777-0453 (FAX)

John E. MacDonald, Esq.
Larochelle & MacDonald, Inc.
One Turks Head Place, Suite 1440
Providence, Rhode Island 02903
(401) 421-1440
(401) 421-1442 (FAX)

**CERTIFICATION**

I hereby certify that on 5-9-06 a true copy of this document was delivered to A.U.S.A. Andrew Reich and A.U.S.A. Lee Vilker, Fleet Center, 50 Kennedy Plaza, Providence, RI 02903.