United States District Court

District of Massachusetts

**Notice of Electronic Filing**

The following transaction was entered on 9/10/2009 at 2:22 PM EDT and filed on 9/10/2009
**Case Name:**       Hatch v. Lappin et al
**Case Number:**     1:09-cv-11490
**Filer:**
**Document Number:** 4

**Docket Text:**
**Judge Nathaniel M. Gorton: ORDER entered. SERVICE ORDER re 2241 Petition. The Clerk of this Court shall serve a copy of the Petition upon the Respondents and the United States Attorney. The Respondents shall, no later than 5:00pm on September 18, 2009, file an answer or other responsive pleading. [Service on respondents made by regular mail; service on US Attorney made by hand-delivery.](PSSA, 3)**

**1:09-cv-11490 Notice has been electronically mailed to:**

Laura Rotolo lrotolo@aclum.org

**1:09-cv-11490 Notice will not be electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** yes
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1029851931 [Date=9/10/2009] [FileNumber=3016175-0
] [d7380dd6a11aa5703e9aeb0e785e9fea55920615aff432950ecc35614c49a0a7ee7
3d67817e31e0afeabae1791917c43621a7b41175fc14d3b680e613acf9529]]

United States District Court
for the District of Massachusetts

| | |
|---|---|
| Richard Hatch,                    )<br>          Petitioner,         )<br>                                   )<br>v.                                 )<br>                                   )   CA Number _____<br>Harley G. Lappin, Director of Bureau )<br>of Prisons, and James M. Cummings, )<br>Sheriff of Barnstable County,      )<br>                                   )<br>          Respondents.        )  | |

**Petition for a Writ of Habeas Corpus
and Motion for Expedited Hearing**

**<u>Preliminary Statement</u>**

1. Petitioner Richard Hatch is a federal prisoner currently being held by the United States Bureau of Prisons ("BOP") at the Barnstable County Correctional Facility ("BCCF"). Hatch, who had appropriately been placed on home confinement for the few remaining months of his sentence, was abruptly removed from that home confinement and placed in solitary confinement at the BCCF after he participated in television interviews and called a radio talk show, in the course of which he made statements critical of government officials. None of these contacts with the media, nor their content were prohibited by applicable BOP rules and regulations.

2. Petitioner contends that he is being held in custody in violation of his First

-1-

Amendment rights to free speech and to participate in a free press and his Fifth Amendment due-process right to be free from constraints based on the arbitrary and capricious application of vague and ambiguous Bureau of Prison regulations.

3. For reasons stated below and at greater length in the annexed memorandum of law, Petitioner hereby moves that this Court issue a writ of habeas corpus under 28 U.S.C. § 2241 et seq. *See also* U.S. Const. Art. 1, § 9, cl. 2 ordering his immediate release and return to home confinement.

4. Due to the urgency of the requested relief —Petitioner has already spent 22 days in solitary confinement and is set to conclude his sentence on October 7, 2009— Petitioner respectfully requests that this Court hold an immediate hearing on the Petition.

### Jurisdiction and Venue

5. This Court has jurisdiction over this action under 28 U.S.C. § 2241 because Petitioner's term in federal custody is being determined by BOP and Respondents are in violation of the Constitution and the laws of the United States.

6. This Court also has jurisdiction under 28 U.S.C. § 1331 because the action arises out of the Constitution and laws of the United States and because the petitioner seeks corrective action by officers and employees of the United States in their official capacity.

7. This Court also has jurisdiction under 28 U.S.C. § 1343(4) because Petitioner seeks to redress the deprivation of rights guaranteed by both the Constitution and federal statutes.

8. Venue is properly established in the District of Massachusetts pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the event giving rise to Petitioner's claims —his illegal detention— occurred and continues to occur in this district.

**Parties**

9. The petitioner, Richard Petitioner, is currently confined at the Barnstable County Correctional Facility, in Bourne, Massachusetts, which is under contract with BOP to house certain federal prisoners. He is in the custody of BOP pursuant to the judgment of the United States District Court for the District of Rhode Island, Case No. 05-CR-00098-S-LDA

10. Respondent, Harley G. Lappin, is the Director of BOP, and, pursuant to a judgment of the U.S. District Court of Rhode Island, has lawful custody of the petitioner and is responsible for the determination of the Petitioner's term of confinement.

11. Respondent James Cummings, is the Sheriff of Barnstable County. As such, he is responsible for the operation of BCCF and, pursuant to an agreement with the BOP, has direct physical custody over the petitioner.

**Statement of Facts**

12. In 2000, Petitioner became the winner of the first season of the television show "Survivor," and subsequently became the subject of media attention.

13. In January 2006, Petitioner was convicted in the United States District Court for the District of Rhode Island of two counts of attempting to commit tax evasion, 26 U.S.C. §7201, and one count of filing a false tax return, 26 U.S.C. §7206(1). On May 16, 2006, Petitioner was sentenced to 51 months' imprisonment followed by 3 years' supervised release. *See United States v. Petitioner*, No. 05-CR-00098-S-LDA.

14. Petitioner was imprisoned at BOP facilities until May 12, 2009, during which time he was subject to BOP regulations regarding media access. While incarcerated, Petitioner requested permission to be conduct interviews with media sources. BOP rejected each of these requests.

15. After completion of a portion of his sentence, BOP determined that Petitioner could appropriately be placed on home confinement, and on May 12, 2009, transferred Petitioner to serve the last five months of his sentence at his home in Rhode Island.

16. Upon being placed in the program, Petitioner was given a set of rules entitled "Barnstable County Sheriff's Office Electronic Incarceration Program Federal Inmate Handbook." The handbook explained 16 rules for the program and the disciplinary actions that would result if they were violated. Not one of the 16 rules –which are the only rules Respondents gave Petitioner— mentions contacting the media.

17. Although no rule of the BOP or the Barnstable County Sheriff placed any restrictions on contacts with or statements to news media by individuals in home confinement, in July 2009, Petitioner's attorney contacted BOP to obtain approval for Petitioner to participate in a media interview while in home confinement. Though the attorney did not believe that such authorization was required, she sought approval "in deference and good faith."

18. Petitioner's attorney spoke with Carla Wilson, BOP's Public Media Executive, about the request, and was informed that now that Petitioner was in home confinement, the BOP would approve a media interview.

19. Petitioner accepted an interview request by NBC, and Petitioner's Attorney communicated this fact to Wilson. At Wilson's request, NBC signed and faxed to Wilson a BOP Media Representative Agreement. On August 17, 2009, Petitioner participated in a continuous sequence of three interviews with three units of NBC: the Today Show, Access Hollywood, and NBC's local Providence, Rhode Island affiliate. All of the interviews were conducted by the same NBC technical crew, using the same equipment, in the same location in Petitioner's house,

although each interview was conducted by a different interviewer for the different NBC shows.

20. During the interviews, Petitioner asserted that he had been wrongly convicted and that the government had engaged in prosecutorial misconduct and had brought the case, at least in part, because of his sexual orientation. He also criticized the BOP for transferring him to a prison far from his home and family and suggested that this transfer may have been motivated by discrimination based on his notoriety and sexual orientation.

21. On August 17, 2009, shortly after the Today Show interview aired, Robert Corrente who at the time of Petitioner's prosecution, was U.S. Attorney for the District of Rhode Island, called in to a local radio show and asserted that Petitioner was "delusional" and that his allegations made during the Today Show were "ludicrous."

22. Petitioner responded by calling the radio show and disputing Corrente's on-air statements. Petitioner had no reason to believe that he was in any way limited in making such a call as no rules governing home confinement required him to obtain prior approval for calling in to a radio show. Indeed, even while incarcerated, petitioner had been told he could call in to radio shows without any prior approval.

23. On August 18, 2009, the day after the call to the radio station, the Sheriff and Deputy Sheriff of Barnstable County, along with other officers, went to Petitioner's home and took him into custody pursuant to BOP orders. Petitioner was taken to Barnstable County Correctional Facility and placed in solitary confinement in the administrative segregation unit, where he continues to be held.

24. BOP filed two separate disciplinary reports justifying this detention, citing a violation of Prohibited Act number 327, "unauthorized contact with the public." On August 18th,

BOP filed a disciplinary report for two "unauthorized" NBC interviews in addition to the Today Show interview. On August 19th, BOP filed a disciplinary report for Petitioner's calling the radio station to address Corrente's assertions.

25. With respect to the first report, BOP took the position that it had only given Petitioner permission to be interviewed by the Today Show and that Petitioner had "violated policy by participating in unauthorized interviews" with interviewers from two additional affiliates of NBC.

26. With respect to the second report, the BOP claimed that Petitioner "conducted an interview . . . without obtaining permission from anyone" when he called in to the talk radio show to respond to criticism levied against him by the former United States Attorney who had been responsible for prosecuting him.

27. On August 27, 2009, Petitioner was called to a meeting with a Barnstable County officer who went through the incident reports. The Barnstable officer informed Petitioner that he had no authority to rule any differently from what BOP had alleged since he was bound to follow BOP's orders. The officer "stated that this 'hearing' was a formality and not a true hearing because he lacked the authority to rule any differently." Petitioner Affidavit Para 17.

28. Despite having requested it earlier, Petitioner was not given copies of evidence against him. During the meeting, Petitioner contended that his actions were not in violation of any written BOP policies or regulations; that if any such regulations existed, they were void for vagueness under the First Amendment and the Fifth Amendment Due Process Clause; and that his single stream of interviews with NBC did not constitute a material breach of the BOP-NBC agreement and BOP's implicit approval of the interview.

29. To date, BOP has not issued a formal ruling on the alleged incidents, and Petitioner remains in custody in solitary confinement at the Barnstable County Correctional Facility.

30. Petitioner has asked repeatedly for the BOP grievance form BP-10 or "Sensitive 10" in order to complain administratively about his detention. Barnstable Lieutenant Bonavita informed Petitioner that the facility does not have that form and that it will be requested from BOP. To date, Petitioner has not received a form on which to file a grievance.

31. Petitioner's term of incarceration ends on October 7, 2009.

32. Since BOP appeals typically take many months to complete, Petitioner's efforts to address his complaint administratively likely will have no practical effect on his current illegal confinement.

## Claim for Relief

### Count One
### Detention Violates the First Amendment

33. Petitioner re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 32 above.

34. The Petitioner's contacts with the news media constitute protected speech under the First Amendment to the U.S. Constitution.

35. By punishing him for engaging in protected speech, Respondents are violating the Petitioner's First Amendment rights.

### Count Two
### Detention Not Authorized by Regulation

36. Petitioner re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 32 above.

37. Petitioner's actions in contacting the media were not prohibitted by BOP regulations or BCCF rules. Respondents' transfer of Petitioner from pre-release on home confinement to solitary confinement as punishment is not authorized by regulation.

## Prayer for Relief

For all of the above-stated reasons, this Petitioner respectfully requests this Honorable Court to issue a writ of habeas corpus, directing BOP immediately to release Petitioner from physical custody and return him to home confinement to serve out the remainder of his sentence. Since BOP cannot lawfully keep Petitioner in custody beyond October 7, 2009, Petitioner further requests that this Court order an expedited hearing on this matter.

Respectfully submitted,

Richard Hatch,
by his attorneys,

/s/Michael R. Schneider
Michael R. Schneider
BBO # 446475
/s/Ryan M. Schiff
Ryan M. Schiff
BBO# 558852
Salsberg & Schneider
95 Commercial Wharf
Boston, MA 02110
617-227-7788

/s/John Reinstein
BBO # 416120
/s/Laura Rótolo
BBO# 665247
American Civil Liberties
Union Foundation of Mass.
211 Congress Street
Boston, MA 02110
(617) 482-3170


September 9, 2009

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants September 9, 2009.

/s/Laura Rótolo

Sept. 9, 2009