# DECLARATION OF CYNTHIA M. RIBAS

I, Cynthia M. Ribas, declare as follows:

1. I am a lawyer duly licensed to practice in the States of California and Texas, and the District of Columbia, Court of Appeals. I am Richard Hatch's attorney though am providing this declaration solely as a witness.

2. I have personal knowledge of the facts set forth below and if called as a witness could and would testify thereto.

3. Since early July 2009, I have been in communication by phone and mail with the Federal Bureau of Prisons (BOP) Community Corrections Manager (CCM) concerning the scheduling of a media interview for Richard Hatch. Though the BOP's media policy is clear on its face that it only applies to "inmates in Federal institutions" (BOP Program Statement 1480.05 §540.2) and so is not applicable to Hatch on home confinement, in deference and good faith, I worked with the CCM to be sure the BOP approved and had all the information it requested prior to scheduling any interview. Attached as Exhibit "A" is a copy of my letter to CCM executive Deborah Mann dated July 14, 2009, responding to her requests for information concerning the contemplated interviews. At the time Hatch was considering media interview requests from ABC, NBC and CBS, among others.

4. The week after sending the attached July 14th letter to Mann, I talked with her concerning the scheduling of media interviews. In that conversation she told me that given the number of requests for media interviews Hatch was considering that she would be turning this matter over to Carla Wilson, the BOP's Public Media Executive. Mann then transferred me to Wilson who told me that yes, now that Hatch was in home confinement, the BOP would approve a media interview but asked that Hatch be the one to select among the requesting media providers as the BOP was not in a position to do so. Previously, when Hatch was an inmate at a Federal prison, as well as when he was in a halfway-house, the BOP had denied all of Hatch's requests for media interviews that involved cameras on the grounds of security. Now that Hatch was in home confinement, the BOP no longer had any applicable security concern.

5. In early August of 2009, I told Wilson by phone that Hatch had selected NBC to

conduct the first interview. Wilson responded by telling me that even though the BOP's Media Representative Agreement (Media Rep Agreement) was drafted for media interviews of inmates in a Federal prison, she still wanted NBC to provide her with a signed copy of that form even though Hatch was not in a Federal correctional facility. Further to Wilson's request, I provided NBC producer Matt Zimmerman a copy of the BOP's Media Rep Agreement for NBC to fill out and fax to Wilson. I also provided Wilson with Zimmerman's contact information so she could be in direct communication with NBC concerning any other additional information the BOP may wish to obtain. Attached as Exhibit "B" is a copy of an email message showing the referenced communication.

6. On August 10, 2009, Zimmerman told me he had sent NBC's signed Media Rep Agreement to Wilson. On August 12, 2009, Zimmerman let me know that Wilson had approved the interview for August 17th. I informed Hatch that the BOP had approved the NBC interview for the 17th and we moved forward with confirming the final arrangements. Attached as Exhibit "C" is a copy of an email message showing the referenced communication.

7. Since I was representing Hatch in these communications with the BOP and NBC, at no time did Hatch have any direct involvement in any of the telephone calls or emails concerning the BOP's approval of the NBC interview. Hatch went forward with the interview based on his lawyer's (my) representation that the BOP's approval had been granted.

8. This matter is not one that calls for discipline of Hatch but rather the result of a miscommunication among the BOP, NBC and Hatch's lawyer (me.)

9. Once the NBC interview was confirmed, I contacted the other media entities that had interview requests pending (including Diane Sawyer's producer at ABC among others) to let them know the NBC line-up had been selected for Hatch's first televised interview. The NBC line-up included interviews by Matt Lauer, Tony Potts and Brian Crandall, for the *Today Show*, *Access Hollywood* and the NBC affiliate in Providence, respectively. Given NBC's corporate vertical integration and for economic efficiency, NBC provided one technical crew for the three interviews. Attached as Exhibit "D" is a copy of an email message showing the referenced communication regarding the contemplated integration of the three interviews on the same day.

10. On August 17th, during the taping of the interviews, Wilson asked that I provide her with the names of the persons present. I was not at the taping site yet when Wilson made this request but I let her know I would find out the names and call them in to her as soon as I got there. Once at the taping site I made a list of the people there and called them into Wilson. Later that same day Wilson left a voice mail message for me asking that I tell her when the shows would air. I returned her call, leaving her a voice mail message with my best information on when the *Today Show* and the NBC Providence affiliate would air, and suggesting she talk with one of the media representatives if she wanted further information about when the shows would be broadcast or how the interviews might be picked up by subsequent channels. Despite the demonstrated good faith cooperation and open lines of communication through and including the day of the NBC interview, Wilson never asked for any more specific information concerning the names of the people or their job titles, though had she done so I would certainly have provided the requested information. Similarly, the BOP Media Rep Agreement she had NBC sign does not include any question about show titles. Zimmerman and I provided all the information Wilson asked for concerning the planned NBC interview in a timely manner and in good faith; hence, there was certainly substantial performance of the intended arrangement concerning the NBC interview going forward as agreed.

11. Immediately after the *Today Show* aired on Tuesday, August 18th, I listened to DePetro's radio talk show on WPRO that included a discussion of Hatch's interview. I heard former U. S. Attorney Robert Corrente refer to Hatch's claims as "ludicrous" and go on to say that Hatch was "delusional." Shortly thereafter Hatch was on that radio show responding to Corrente's derogatory remarks. While in Federal prison Hatch had been told he could call in to radio shows and talk with newspaper reporters so long as it was print media without cameras coming into the prison. Hatch gave two print media interviews while in prison, one for the *Toronto Sun* and another for the *Boston Globe*. Given his right to free speech, the absence of any policy applicable to home confinement requiring prior permission from the BOP to call into a radio talk show, the absence of any security concern in a home confinement circumstance, Hatch had no notice of and could not have known that the BOP would want him to obtain its consent

3

**RIBAS DECLARATION IN SUPPORT OF RICHARD HATCH**

prior to calling in to a radio talk show. Attached as Exhibit "E" is a copy of the ACLU's August 20, 2009 News Release concerning free speech in home confinement.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on August 21, 2009, at Los Angeles, California.

_____
Cynthia M. Ribas



July 14, 2009

*Via Facsimile*

Deborah Mann
FDC Philadelphia
Federal Detention Center
P.O. Box 572
Philadelphia, Pennsylvania 19106

    Re:   *Richard Hatch – 05559-070*

Dear Ms. Mann:

    Further to our telephone conversation earlier today and your request, attached is a list of website references to a sampling, in no particular order, of some of the media articles published during the last few days that Mr. Hatch seeks permission to address. Also attached are copies of emailed requests for interviews that Mr. Hatch has recently received.

    The News Interview Authorization forms will follow under separate cover. As we discussed and you'll see, the dates and times of these interviews have been left blank in deference to the BOP's approval of any such interview before it can be scheduled. Also, as the BOP may not be in a position to select among media providers, Mr. Hatch is prepared to choose 1 or a more limited number of interviews than the total number for which approval is here requested if that would be more consistent with the BOP's concerns.

    Again, please know Mr. Hatch's intent is to continue to be fully compliant with all of the BOP's requirements as he completes his sentence. The approvals here following are submitted per his and my understanding of what you have expressed the BOP needs in order to make its determination. However, if any further information is required or would be helpful, please do not hesitate to contact either of us.

    Thank you for your time and consideration.

                        Best regards,

                        Cynthia M. Ribas, Esq.

Attachments

cc:  Richard Hatch (w/o attachments)

### cynthia ribas

**From:** cynthia ribas [cynthia@legalbegal.com]
**Sent:** Thursday, August 06, 2009 12:50 PM
**To:** Zimmerman, Matt (NBC Universal)
**Subject:** Media Rep Agreement

Matt,

Attached is the Bureau of Prison's Media Representative's Agreement. Once we know the date, that and a couple more pieces of information need to be included in a letter/fax cover sheet to the Bureau from your office.

Thank you.

Best,
Cynthia


Cynthia M. Ribas, Esq.
Ribas Legal



8/21/2009

**cynthia ribas**

From: Zimmerman, Matt (NBC Universal) [Matt.Zimmerman@nbcuni.com]
Sent: Wednesday, August 12, 2009 7:16 AM
To: cmwilson@bop.gov
Cc: cynthia@legalbegal.com
Subject: NBC

Ms. Wilson,

Thank you for confirming NBC's interview this coming Monday at 3pm. If any issues come up, I will be sure to call you. I am always reachable as well.

Matt



**cynthia ribas**

---

From: Zimmerman, Matt (NBC Universal) [Matt.Zimmerman@nbcuni.com]
Sent: Monday, August 10, 2009 3:13 PM
To: cynthia@legalbegal.com
Cc: Silverstein, Rob (NBC Universal)
Subject: TODAY/Access Hollywood

Hi Cynthia,

Just spoke with Rob and makes the most sense for financial reasons to use the TODAY crews for all three interviews. We will all plan to tape back to back on Monday afternoon, starting around 3p. Brian from WPTV and Access Hollywood will start right after us. We will air our interviews on Tuesday. Matt will be done no later than 4p.

Thanks again.

Matt



8/21/2009



128 DORRANCE STREET, SUITE 220
PROVIDENCE, RI 02903
401.831.7171 (t)
401.831.7175 (f)
www.riaclu.org

**NEWS RELEASE**          **THURSDAY, AUGUST 20, 2009**

## ACLU CONDEMNS JAILING OF RICHARD HATCH
## FOR SPEAKING TO THE MEDIA

Rhode Island ACLU executive director Steven Brown issued the following statement today in response to news reports that Richard Hatch was arrested and is being held in jail for talking to members of the media about his tax evasion case without getting formal approval from the federal Bureau of Prisons:

"Although Richard Hatch remains under the jurisdiction of the Bureau of Prisons until his sentence is completed, he retains certain fundamental constitutional rights. He is not in prison, but is living in the community on home confinement. While that sentence certainly entitles the BOP to limit Mr. Hatch's physical movements, it should not give the agency the right to prevent him from using his vocal cords.

"Mr. Hatch has gone into court, as he has every right to do, to contest the validity of his conviction on tax evasion charges. The First Amendment similarly guarantees him the right to speak out on that court case, on his conviction and why he feels he has been wronged. Mr. Hatch should not need to seek permission from a federal bureaucrat to publicly respond to charges from a former public official that his allegations are 'delusional.' Nor, even more critically, should a person's failure to seek such permission land him or her in prison.

"In sum, it is impossible to conceive of any legitimate penological basis for stifling Mr. Hatch's efforts to speak about his own case. It is appalling that he would actually be sent to jail for engaging in quintessential free speech activity.

"It is important to understand the ramifications of the BOP's action. If Mr. Hatch can be punished merely for speaking out about his case, he could just as easily be punished and jailed merely for speaking out against the Bureau of Prisons' policies or practices. Such a limit on public discourse, even of an individual who has been convicted of a crime, is intolerable in a society that values and protects public discourse on important issues."

**FOR MORE INFORMATION, CONTACT:** Steven Brown: 831-7171

