

## Affidavit of Richard Hatch

I, Richard Hatch, being duly sworn, hereby state as follows:

1. I am a federal prisoner being held by the United States Bureau of Prisons ("BOP") at the Barnstable County House of Corrections, where James M. Cummings is the Sheriff.

2. In 2000, I was the winner of the first season of the TV show *Survivor*. During the show, I was very open about the fact that I am gay.

3. In January 2006, I was convicted in the United States District Court for the District of Rhode Island of two counts of attempting to commit tax evasion, 26 U.S.C. §7201, and one count of filing a false tax return, 26 U.S.C. §7206(1). On May 16, 2006, I was sentenced to 51 months' imprisonment followed by 3 years' supervised release.

4. I was imprisoned by BOP at several different federal correctional facilities and on May 12, 2009, I was transferred to a halfway house.

5. On June 25, 2009, BOP released me to home confinement pursuant to BOP's pre-release home-confinement program.

6. When I was released on home confinement, no official gave me notice that I would be required to obtain prior permission to participate in interviews. Nor was I given any document that mentioned such a condition.

7. In July 2009, I had my attorney Cynthia R. Ribas contact BOP to obtain approval for me to participate in a media interview while in home confinement. I had

been contacted by multiple media outlets, including ABC, CBS, and NBC, about the possibility of their interviewing me. I had not yet decided which media outlet I wanted to be interviewed by.

8. Ribas told me that she did not believe that BOP's authorization was legally required, but that she thought that it would show good faith for us to get permission.

9. Ribas informed me that she spoke with Carla Wilson, BOP's Public Media Executive, about the request. Wilson told Ribas that since I was now in home confinement, BOP was willing to permit me to be interviewed by one of the media outlets but that it was up to me to choose which one.

10. I selected NBC as the media outlet to conduct the interview and Ribas communicated this fact to Wilson. I have since learned that a media agreement was signed by NBC and BOP, but I was never shown the agreement.

11. On August 17, 2009, an NBC crew showed up at my house, along with interviewers from the Today Show, Access Hollywood, and NBC's local Providence, Rhode Island, affiliate. I was then interviewed by the three interviewers who all used the same NBC technical crew and the same equipment.

12. I wanted to do this interview to clear my name and to criticize government officials and government agencies who I thought had treated me unfairly. During the interview, I stated that I was innocent and that the government had engaged in prosecutorial misconduct and had brought the case, at least in part, because I am gay. I

also criticized the BOP for transferring me to a prison far from my home and family and said that I believed that this transfer may have been motivated by discrimination based on my notoriety from *Survivor* and my sexual orientation.

13. Shortly after the Today Show interview aired, Robert Corrente, the U.S. Attorney who prosecuted me, called into a local radio station and asserted that I was "delusional" and that my allegations were "ludicrous."

14. I decided to call in to challenge Corrente's personal attacks on me. Even when I was in prison BOP officials had told me that I could call in to radio shows and could talk by telephone with newspaper reporters

15. On August 18, 2009, BOP officials showed up at my door and arrested me. After removing me from home confinement, BOP sent to the Barnstable House of Corrections, where I continue to be incarcerated in solitary confinement.

16. On August 18 and 19, 2009, BOP filed two separate disciplinary reports against me. On August 18th, BOP filed one for the two "unauthorized" NBC interviews in addition to the Today Show interview, and on August 19th, BOP filed one for calling the radio station to challenge Corrente's assertions.

17. On August 27, 2009, the Barnstable County House of Corrections held what they refer to as a "hearing" on the disciplinary reports. The Barnstable Officer told me that, in this case, he had no authority to rule differently from what the BOP had alleged. He stated that this "hearing" was a formality and not a true hearing because he lacked the

authority to rule any differently. Although I had submitted requests for documents relating to the incidents in order to prove my innocence, none were ever provided.

18. During the "hearing," I actively contested BOP's actions. I contended that my actions were not in violation of any written BOP policies or regulations; that if any such regulations existed, they were too vague for me to know what I could and could not do; that my interviews with the NBC interviewers did not violate BOP's authorization of my contacts with NBC; and that punishing me for giving the interviews and calling the radio show would violate the First Amendment.

19. BOP has not yet issued its ruling. If BOP's decision does not result in my immediate release from custody, I intend to do everything necessary to appeal that ruling and to exhaust my administrative remedies. Upon entering the Barnstable County House of Corrections, I asked for the forms required to seek administrative remedies. Specifically, I asked for form BP-10, or "Sensitive 10." Lieutenant Bonavita informed me that she did not have the form but would request it from BOP.

20. My term of incarceration ends on October 7, 2009, and I am afraid that the BOP appeal process won't be completed until after I have served my time.

21. The reason I gave the interviews and called the radio show was to clear my name and to criticize government officials whom I felt I had mistreated me, at least in part, because of the fact that I am gay. I feel that the government has violated my First Amendment rights by returning me to a jail cell for speaking my mind.

-5-

Signed under the pains and penalties of perjury.

_____
Richard Hatch

Dated: September 3, 2009