**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

- - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA    :
                        :
     v.                  :    CR. No. 05-098 S
                        :
RICHARD HATCH            :
- - - - - - - - - - - - - - - -

**MEMORANDUM AND ORDER**

William E. Smith, United States District Judge.

Richard Hatch has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. For the reasons stated below, that motion is denied.

I.  Background and Travel[1]

On September 8, 2005, Hatch was charged in a ten-count indictment with related tax and fraud offenses. Count 1 charged that Hatch willfully attempted to evade income taxes by signing and filing a false tax return for the tax year 2000, in violation of 26 U.S.C. § 7201, in which he willfully failed to declare three sources of income: (a) over $1 million that he won on the nationally televised CBS mini-series, *Survivor*; (b) $18,708 in rental income from a property he owned in Newport;

---

[1] A full description of the facts and background of this matter is set forth in the appellate decision affirming Hatch's conviction, United States v. Hatch, 514 F.3d 145 (1st Cir. 2008). This Court recites only those facts pertinent to the issues raised in the instant motion to vacate, which are drawn from the appellate opinion and the record of Hatch's underlying trial and sentencing.

and (c) $25,000 in charitable donations that he diverted to his own use (making it reportable personal income).

Count 2 alleged Hatch filed a false tax return for the year 2001, in violation of 26 U.S.C. § 7201, in which he willfully failed to declare four sources of income: (a) roughly $320,000 that he received as co-host of a radio show; (b) $9,396 in rental income from the Newport property; (c) $27,074, representing the value of a car he won as part of his *Survivor* show prize; and (d) $11,500 in charitable donations which he diverted to his own use.

Count 3 alleged Hatch filed a 2001 tax return for Tri-Whale Enterprises, Inc., an S-corporation created to receive his radio show income, in which he falsely stated that Tri-Whale's annual income was $68,173, omitting the $320,000 income discussed above, in violation of 26 U.S.C. § 7206(1).

Counts 4 - 9 charged that Hatch defrauded four companies which contributed $36,500 in charitable donations (the same money that formed a partial basis of Counts 1 and 2), in violation of 18 U.S.C § 1343 or 1341. Count 10 alleged that Hatch defrauded People's Credit Union when he altered a $25,000 donation check so that he appeared as a payee, and then deposited it in his personal account there, in violation of 18 U.S.C. § 1344.

Throughout all proceedings in this Court, Hatch was represented by retained counsel, Attorneys Michael Minns and John MacDonald. All trial and sentencing proceedings were conducted by Judge Ernest C. Torres of this Court.[2]

A nine-day trial was held at which a number of witnesses testified. Mark Burnett, owner of *Survivor* Entertainment Group (SEG) and the producer of the *Survivor* show, testified that Hatch received a total of $1,010,000 in cash earnings from the *Survivor* show in 2000. (See Trial Tr. Vol. I, 84-88, 92, Jan. 12, 2006 ("Trial Tr.-I").)[3] He confirmed that each *Survivor* contestant signed a contract that provided, "I shall pay all state and federal or other taxes on any prizes I win." (Id. at 88.) Burnett stated that contestants were not employees of SEG and confirmed that a Form 1099 was issued to Hatch for the $1,010,000 in payments. (Id. at 89, 99-100.)

Richard Plotkin and Jodi Rodriguez-Wallis ("Wallis"), the accountants who worked on Hatch's tax returns for the years in question, also testified. Plotkin testified that he prepared a tax return for Hatch for 2000, which included Hatch's $1 million *Survivor* winnings and other sources of income; he met with Hatch

---

[2] This writer was assigned this matter upon Judge Torres' retirement.

[3] In addition to his $1 million prize, Hatch (along with the other finalists) received a separate $10,000 for appearing at a 'Town Hall-type' discussion with all contestants on the night the final *Survivor* show aired. (Trial Tr.-I 91-93.)

and discussed the return; Hatch took the return but he did not know whether it was ever filed. (See generally Trial Tr. Vol. III 81-117, Jan. 17, 2006 ("Trial Tr.-III").)

Wallis testified *inter alia* that she worked on Hatch's returns for 2000 and 2001; the 2000 tax return she prepared included his $1 million *Survivor* winnings; at Hatch's request she subsequently prepared a "hypothetical" tax return for 2000 omitting the $1 million winnings, but she instructed him not to file it and he signed a written acknowledgment that the hypothetical return was not to be filed. (See Trial Tr.-III 151-170; Trial Tr. Vol. IV, 1-41, Jan. 18, 2006 ("Trial Tr.-IV").) Wallis further testified that she prepared 2001 tax returns for Hatch individually and for Tri-Whale Enterprises and neither return included the income received from his services as a radio show co-host or from the automobile he received as part of his *Survivor* winnings, as Hatch did not inform her of either. (Trial Tr.-IV 41-61.)

IRS Agent Michael Pleshaw testified about the tax loss resulting from Hatch's filing of the false returns for himself and Tri-Whale Enterprise in 2000 and 2001 and that the total amount due and owing for both 2000 and 2001 was $474,971. (See Trial Tr. Vol. V, 75-109, Jan. 19, 2006 ("Trial Tr.-V").)

According to Hatch, one of his principal defenses at trial was that Burnett had promised CBS or SEG would pay all taxes on

-4-

his *Survivor* winnings in response to Hatch's complaints regarding incidents of cheating during the *Survivor* show's filming.

At the conclusion of trial, a jury found Hatch guilty on the three tax counts (Counts 1-3) and acquitted him of the remaining charges (Counts 4-10).

The Presentence Report (PSR) prepared by the U.S. Probation Office calculated a guideline range of 25 to 41 months, based on an offense level of 20 and a criminal history category I. The Government filed a motion for a two-level adjustment for obstruction of justice based on Hatch's false testimony at trial. Counsel for Hatch filed objections to the proposed obstruction of justice enhancement and to the calculation of the tax loss and argued those objections at the sentencing hearing. (See Sentencing Tr. 13-39, 43-46, May 16, 2006 ("Sent. Tr.").)

At sentencing, Judge Torres denied the objections and found, based on the testimony of Agent Pleshaw and the PSR, the tax loss resulting from Hatch's offenses to be more than $400,000, which resulted in a two-level upward adjustment in his offense level. (Id. at 39.) In addition, the Court, after cataloging a number of instances where it believed Hatch testified falsely at trial or submitted false information to the U.S. Probation Office, imposed a two-level enhancement for obstruction of justice. (Id. at 46-60.) The resulting

guideline range was 37 to 51 months.  The Court sentenced Hatch

to 51 months imprisonment, the high end of the guidelines range,

followed by three years of supervised release.[4]

Hatch appealed his conviction and sentence, represented by

Attorney Minns.  He argued *inter alia* that the trial court (1)

improperly precluded him from testifying concerning Burnett's

offer to pay any taxes on Hatch's winnings in exchange for his

silence concerning the cheating that allegedly occurred during

the filming of *Survivor*; (2) erroneously limited his cross-

examination of Plotkin, Wallace and an IRS agent Jason Rameaka;

(3) erroneously admitted expert testimony presented by the

Government; and (4) unduly restricted the direct testimony of a

defense witness, accountant Dan Urso.  Hatch also challenged the

sentencing court's calculation of the tax loss and the upward

adjustment for obstruction of justice.  The Court of Appeals

rejected all of these arguments and affirmed Hatch's conviction

---

[4] The Court also imposed two special conditions of release, requiring Hatch: (1) to "participate in and satisfactorily complete a program of mental health counseling and treatment . . . as approved by the U.S. Probation Office"; and (2) to "file amended income tax returns for the 2000 & 2001 calendar years, both individually and for Tri-Whale Enterprises, Inc., and pay all taxes due and owing for those years." (Am. Judgment 4, Aug. 2, 2006, ECF No. 75.)

The Amended Judgment did not change the conditions of release but merely modified the wording in the original Judgment (ECF No. 64) describing the offenses for which Hatch was convicted.  Those changes are not material to this Court's ruling on the instant motion.

and sentence.  United States v. Hatch, 514 F.3d 145 (1st Cir. 2008).  Further review was denied by the Supreme Court.  Hatch v. United States, 129 S. Ct. 103 (2008).

Thereafter, Hatch filed the instant motion to vacate (ECF No. 97).  In his motion he asserts four claims:  (1) ineffective assistance of his counsel due to his trial counsel's failure (a) to effectively cross-examine certain government witnesses; and (b) to adequately dispute the Government's calculation of the tax loss and the obstruction-of-justice sentence enhancement; (2) ineffective assistance of counsel in failing to adequately argue certain issues on appeal; (3) sentencing errors by the Court due to miscalculating the tax loss resulting from Hatch's offenses and improperly assessing an obstruction of justice enhancement for perjury; and (4) a claim of "freestanding actual innocence."

The Government has filed a Response (ECF No. 110) objecting to the motion, to which Hatch has replied and filed several additional submissions.[5]  No hearing is necessary,[6] and this

---

[5]  In addition to a Reply Brief in support of his § 2255 motion (ECF No. 114), Hatch has filed a Supplemental Reply (ECF No. 116), a Second Supplemental Reply Brief (ECF No. 121), and a Third Supplemental Reply Brief (ECF No. 122).  The contentions raised therein are discussed infra.

[6]  Although Hatch has requested an evidentiary hearing, no hearing is required in connection with any issues raised by his motion to vacate, because, as discussed infra, the files and records of this case conclusively establish that the claims in

matter is ready for decision.[7]

II. Discussion

    A.   General Principles

    Generally, the grounds justifying relief under 28 U.S.C. §2255[8] are limited. A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. See <u>United States v. Addonizio</u>, 442 U.S. 178, 184-85 (1979) ("[A]n error of law does not provide a

---

the instant motion to vacate are without merit. See <u>David v. United States</u>, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal citation and quotations omitted).

[7] This Court notes that Hatch completed his sentence and was released in October 2009 while his motion to vacate was pending with this Court, but this does not impact either the pendency or resolution of his claims. See <u>Smullen v. United States</u>, 94 F.3d 20, 22 n.1 (1st Cir. 1996) (jurisdiction to determine § 2255 motion attaches so long as defendant is in custody at time motion to vacate is filed).

[8] Title 28 U.S.C. § 2255 provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.") (internal citation and quotations omitted).

Moreover, a motion under § 2255 is not a substitute for a direct appeal. See United States v. Frady, 456 U.S. 152, 165 (1982). A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both "cause" for the default and "actual prejudice," or alternatively, that he is "actually innocent" of the offense of which he was convicted. Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). Claims of ineffective assistance of counsel, however, are not subject to this procedural hurdle. See Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

B.  Ineffective Assistance Claims

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1) That his counsel's performance fell below an objective standard of reasonableness; and

(2) [A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984); accord United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010).

In assessing the adequacy of counsel's performance, the Court looks to 'prevailing professional norms.'  All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances.  Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) (citing Strickland, 466 U.S. at 688-89). To satisfy the deficient-performance prong, the defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'"  Manon, 608 F.3d at 131 (quoting Strickland, 466 U.S. at 690).

To satisfy the prejudice requirement under Strickland, a defendant must show a reasonable probability that, but for counsel's errors, the outcome of trial would have been different.  "A reasonable probability is one sufficient to undermine confidence in the outcome. . . .  In making the prejudice assessment, [a court] focus[es] on the fundamental fairness of the proceeding."  Id. at 131 (internal citation and

quotations omitted); accord United States v. Theodore, 468 F.3d 52, 56 (1st Cir. 2006).

In addition, an attorney's trial performance is accorded deferential review, and a court should not assess that performance based on hindsight.  Strickland, 466 U.S. at 690-91; Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993). Finally, "[t]he Constitution guarantees only an effective defense, not necessarily a perfect defense or a successful defense." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (internal citation and quotations omitted).

Here, Hatch alleges several instances of alleged ineffective assistance by his counsel.  Each will be discussed in turn.

1.   Questioning about Alleged Promise to Pay Hatch's Taxes

Hatch first claims that his counsel failed to adequately question both Burnett and Hatch himself concerning Burnett's alleged promise to have CBS pay any taxes on Hatch's winnings in exchange for Hatch's agreement not to disclose the cheating that occurred during the filming of *Survivor*.  Each witness is addressed separately.

a.   Cross-Examination of Burnett

Hatch contends that Attorney MacDonald failed to ask Burnett any questions about whether he promised Hatch that SEG

or CBS would pay the taxes owed on Hatch's $1 million winnings and about Hatch's complaints concerning irregularities or cheating during filming. (Pet'r's Mem. at 10-11.)

The First Circuit has noted that "choices in emphasis during cross-examination are prototypical examples of unchallengeable strategy." Phoenix v. Matesanz 233 F.3d 77, 83 (1st Cir. 2000) (citing Matthews v. Rakiey, 54 F.3d 908, 916-18 (1st Cir. 1995)); See also Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997) ("Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."). In addition, counsel's tactical decisions concerning strategy are entitled a "strong presumption" of correctness. Strickland, 466 U.S. at 689; Lema, 987 F.2d at 56.

On direct examination Burnett testified that Hatch received a total of $1,010,000 in cash earnings from the *Survivor* show in 2000 and confirmed that all *Survivor* contestants agreed to pay all state and federal or other taxes on any prizes won. (Trial Tr.-I 84-88, 92.) Burnett stated that contestants were not employees of SEG and that a 1099 form was issued to Hatch for the $1,010,000 in payments. (Id. at 89, 99-100.)

On cross-examination Burnett was not directly asked whether he had made a promise to Hatch concerning the payment of taxes on his *Survivor* winnings or about Hatch's complaints of

cheating. However, Burnett had given a pretrial statement to investigators, stating in unequivocal terms that Hatch was accountable for paying taxes on the $1 million, and the Government asserts without dispute that this statement was provided to Hatch.

This Court finds that Attorney MacDonald's decision not to question Burnett about an alleged promise that CBS would pay Hatch's taxes was not unreasonable. MacDonald could well have concluded, in view of Burnett's pretrial statement, that Burnett, if asked, would have likely denied such a promise. Moreover, the pretrial statement was corroborated by the term in Hatch's written contract with SEG that he would be responsible for paying all income tax on his earnings. In view of these factors, counsel's decision not to question Burnett and potentially risk eliciting damaging testimony denying any promise to pay Hatch's taxes easily falls within the realm of strategy decisions by a defense attorney that are entitled to the presumption of reasonableness, and which should not be second-guessed in hindsight. See Strickland, 466 U.S. at 689; Phoenix, 233 F.3d at 83.

Moreover, even if counsel's failure to question Burnett on this point was deficient, Hatch does not show how he was prejudiced. As the Court of Appeals noted, evidence that irregularities occurred in the filming of the show was material

-13-

only if coupled with evidence of Burnett's (or other SEG representative's) promise that SEG would pay Hatch's taxes. <u>Hatch</u>, 514 F.3d at 153. As discussed <u>infra</u>, apart from his own self-serving statements, Hatch does not point to any evidence that such a promise was made. Furthermore, contrary to Hatch's contention, there was no mention in Attorney Minns' opening statement that Burnett would testify concerning Hatch's complaints of irregularities during filming or any promises he made in response to those complaints.[9]

Hatch also faults his counsel for failing to question Burnett concerning the revisions to *Survivor* contracts with contestants in subsequent years to provisions governing tax withholding and the payment of taxes by contestants. (Pet'r's Mem. 12-13.)[10] However, Hatch makes no showing as to how those subsequent revisions would have been relevant to the issue of

---

[9] For that matter, a review of the transcript shows that Attorney Minns made no reference at all in his opening statement to anticipated evidence of "cheating" or "irregularities" during the filming, nor to any promises made by SEG or Burnett to Hatch concerning the payment of taxes.

[10] These revisions included changes in para. 14 (providing that contestants were responsible for payment of all taxes on prizes won) that (1) deleted the clause "less all applicable withholdings, deductions and taxes"; and (2) added new language to the clause: "Producer may, <u>but is not required to</u>, deduct, withhold or require payment of such taxes before delivery of any prizes or awards." (New language underlined.) The revisions also included the insertion of an express reference to contestants' responsibility to pay "foreign taxes" in para. 3.

whether he willfully failed to pay taxes on his *Survivor* winnings in 2000, and therefore this point fails.

Thus, none of Hatch's contentions concerning his counsel's questioning of Burnett show any deficient performance or prejudice to Hatch.[11]

b. Direct Examination of Hatch

Hatch further claims that Attorney Minns failed to adequately examine him concerning the same issues of cheating and irregularities that occurred on the set and Burnett's related promise to pay Hatch's taxes. This claim fails for reasons similar to those concerning the questioning of Burnett. First, the record shows that Minns repeatedly attempted to question Hatch concerning these irregularities, but the Court ruled against them on the grounds of relevancy. Counsel may not be faulted for failing to ask questions that he attempted to ask but was prohibited from doing so by the Court.

In upholding Judge Torres' rulings on this issue, the Court of Appeals noted that no proffer was ever made at trial regarding Burnett's alleged promise that SEG would pay taxes on

---

[11] Although Hatch contends that Attorney MacDonald should have cross-examined Burnett regarding "false statements Burnett made to the Grand Jury" (Pet'r's Mem. 11), the Government represents that Burnett did not appear as a witness before the grand jury and Hatch does not dispute this. Thus, this argument need not be addressed.

Hatch's behalf.  <u>Hatch</u>, 514 F.3d at 155.[12]  Here, Hatch has likewise failed to make a showing of any promise. Nowhere in his motion to vacate or supporting papers does Hatch specifically identify the time, place, and and/or wording, whether paraphrased or otherwise, of any communication by Burnett or other SEG representative -- either verbal or written -- explicitly promising him that his income taxes on winnings would be paid as a *quid pro quo* for Hatch's silence concerning the cheating and irregularities that allegedly occurred during the filming of the *Survivor* show. Counsel cannot be faulted for failing to elicit evidence that has not been shown to exist. Thus, counsel was not deficient in his questioning of Hatch.

Absent such a showing, Hatch's argument is reduced to a conclusory contention that an unspecified conversation occurred, and as a result he was left with the "impression" or "understanding" his taxes would be paid by SEG. This is

_____

[12] In its extensive discussion of this issue on appeal, <u>see</u> <u>Hatch</u>, 514 F.3d at 152-157, the Court of Appeals noted that Judge Torres had clearly invited Hatch to introduce direct evidence as to the alleged promises by Burnett and other SEG representatives to pay Hatch's income taxes but that Hatch failed to do so. <u>Id.</u> at 156. ("Neither defense counsel's proffers nor Hatch's courtroom testimony ever described conversations with SEG's representatives in which they made offers or promises to pay Hatch's taxes if he won the prize.") However, the Court found that "without evidence that the producers had agreed to pay Hatch's taxes, the evidence that Hatch had caught those running the show cheating was of no contextual materiality to the revenue violations with which Hatch was charged." <u>Id.</u> at 157.

insufficient to show deficient performance. <u>See</u> <u>Wallace v.</u>
<u>United States</u>, 526 F. Supp. 2d 277, 287 (D.R.I. 2007)
(conclusory allegations or factual assertions that are
unsupported or contradicted by the record will not suffice)
citing <u>Lema</u>, 987 F.2d at 51-52)).

For the same reasons, Hatch was not prejudiced by counsel's
failure to question him on something that has not been shown to
have occurred. In addition, even if Hatch did testify to such a
promise by Burnett, he cannot show a probability that the result
on this Count, let alone his overall convictions on the other
Counts,[13] would have been different. At trial there was
uncontroverted evidence that both of Hatch's accountants,
Plotkin and Wallis, told him that the *Survivor* winnings had to
be reported on his 2000 tax return, that both prepared tax
returns reflecting those winnings, and that Hatch chose not to
file either of those returns, but instead filed a hypothetical
return prepared by Wallis that omitted his $1 million winnings
-- notwithstanding his written acknowledgment that the
hypothetical return was not to be filed.

Moreover, Hatch's $1 million *Survivor* prize was only one
aspect of one count of his three counts of conviction. There was

---

[13] As noted, Hatch was sentenced to 51 months imprisonment
on each of Counts 1 and 2, and to 36 months imprisonment on
Count 3, with all terms to run concurrent with each other. (<u>See</u>
Am. Judgment 2; Sent. Tr. 75-76.)

compelling evidence concerning Hatch's failure to report, and pay taxes on, other income items of Count 1 (e.g., rental income, Hatch's conversion of $25,000 charitable contribution to Horizon Bound), Count 2 (radio show income, other charitable income) and Count 3 (Tri-Whale Enterprises income). Hatch's nonpayment of taxes as to these other items would have been more than sufficient to prove his guilt on all three counts.

In short, Hatch has shown neither deficient performance nor prejudice with respect to questioning witnesses concerning the alleged promise by Burnett that CBS/SEG would pay income taxes due on Hatch's *Survivor* winnings.

Hatch's assertion that his counsel should have called other witnesses to testify concerning the above-described irregularities and cheating (Pet'r's Mem. 14) likewise fails. Hatch does not identify these witnesses, nor does he state specifically what they would testify to and how it would help his case.

In the absence of any showing that any of these witnesses could have testified directly to SEG's promise to pay Hatch's taxes, counsel's failure to call such witnesses does not constitute deficient performance. See Lema, 987 F.2d at 54 (noting that "[t]he decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony").

### 2. Examination of Wallis

Hatch further contends that his counsel was ineffective with respect to challenging the testimony of his accountants, particularly Wallis, at trial. (Pet'r's Mem. 16-21.) He argues[14] that Attorney Minns failed to effectively challenge Wallis' testimony regarding (1) why she prepared the hypothetical 2000 tax return (omitting his *Survivor* winnings), (2) his status as an employee or independent contractor on the *Survivor* show, and (3) his alleged theft or casualty investment loss. Hatch further argues that Minns failed to highlight Hatch's lack of tax expertise and reliance on the expertise of Wallis.

This Court notes that issues of Wallis' (and Plotkin's) testimony were extensively discussed on direct appeal, and the Court of Appeals found no error in the trial court's limitation of defense counsel's cross-examination of Wallis. Here, Hatch attempts to re-present these issues in the context of ineffective assistance. The fact that counsel was precluded from

---

[14] As the Government points out, Hatch's argument on this point essentially reiterates arguments he raised on direct appeal concerning inconsistencies in, and the credibility of, Wallis' testimony -- which was for the jury to resolve -- rather than focusing on trial counsel's performance. For example, Hatch questions Wallis' testimony regarding what, if any, Form 1099 Hatch delivered to her and (ironically) whether Wallis made sufficient efforts to confirm or verify the tax information Hatch provided her. (Pet'r's Mem. 18-19.) These arguments are irrelevant to the instant § 2255 motion.

inquiring as to certain subject areas while cross-examining Wallis does not mean that counsel's performance was deficient.

Moreover, a review of the record shows that Wallis was subject to extensive and vigorous cross-examination by Minns, and Minns spent a substantial portion of his closing statement arguing that Wallis' testimony was not credible. (See Trial Tr.-IV 63-138; Trial Tr. Vol. VIII, 60-84, Jan. 24, 2006 ("Trial Tr.-VIII").) The fact that the jury chose to credit Wallis' testimony over Hatch's is within the province of the jury and does not render Minns' performance deficient. See United States v. Rodriguez, 457 F.3d 109, 119 (1st Cir. 2006) (inconsistencies in witness testimony and questions arising from conflicting details "were all proper matters for the jury to evaluate in determining witness credibility and the overall strength of the evidence").[15]

---

[15] Hatch also contends that Attorney Minns should have objected to the testimony of Plotkin as hearsay. (Pet'r's Mem. 18.) The record reveals, however, that Minns did make that objection, and that Plotkin's testimony was restricted to those conversations he had directly with Hatch. (Trial Tr.-III 86.) Hatch's assertion that his counsel should have called as a witness Laura Defonseca, an employee of Plotkin who worked on Hatch's tax return (see id.), is likewise rejected, as it is undeveloped and fails to explain what she would have said and how it would have helped his defense. See Cody v. United States, 249 F.3d 47, 53 n.6 (1st Cir. 2001) (ineffective assistance claim raised in a perfunctory manner in § 2255 proceeding deemed waived).

In short, Hatch has failed to establish either deficient performance or prejudice under <u>Strickland</u> in connection with his counsel's examination of Wallis or Plotkin.

    3.  Performance with Respect to Tax Loss and Perjury Enhancement

Hatch further claims that his counsel failed adequately to challenge the calculation of the tax loss and the imposition of the sentencing enhancement for obstruction of justice.  Neither claim has any force.

Contrary to Hatch's contention, his counsel vigorously contested both of these enhancements.  Prior to the sentencing hearing, counsel filed a written objection to the PSR, opposing both the tax loss calculation and the obstruction of justice enhancement, and both counsel argued in support of these objections at the sentencing hearing.  (Sent. Tr. 5-12, 31-32.) The fact that his counsel were not successful does not mean that their performance was deficient.  See <u>Myles v. Dahlberg</u>, 937 F.2d 609, *2 (6th Cir. 1991) (Table) ("Just because a lawyer loses on a point does not mean that the lawyer was 'ineffective' for constitutional purposes."); <u>Campusano v. United States</u>, No. 03 Civ. 2982(SAS), 2004 WL 1824112, at *4 (S.D.N.Y. Aug. 13, 2004) ("The fact that an attorney lost a particular argument cannot be used as a barometer of overall poor performance.  Nor

does such loss necessarily indicate ineffective assistance of counsel with regard to the contested issue.").

In any event, as discussed _infra_, both the calculation of tax loss and the obstruction of justice enhancement are more than adequately supported by the record, and Hatch has made no showing that any argument his counsel could have made as to either issue would have caused the Court to reconsider its determination.

### 4. Generalized Claims of Ineffective Assistance at Trial

Finally, Hatch's generalized claim that his counsel was unprepared due in part to having insufficient time to prepare (Pet'r's Mem. 10) is belied by the record. The docket shows that both Minns and MacDonald were retained by Hatch months before the trial actually began and that they filed pretrial motions and attended numerous pretrial hearings. Moreover, a review of the trial transcript shows that Attorney Minns vigorously defended Hatch and extensively questioned government and defense witnesses and that he was ably assisted by Attorney McDonald.

In short, performance of both trial counsel was well within "the wide range of reasonable professional assistance" specified under _Strickland_, 466 U.S. at 689. _See also_ _Peralta_, 597 F.3d

at 79 (a defendant is entitled to "an effective defense, not necessarily a perfect defense or a successful defense").

### 5. Counsel's Performance on Appeal

Hatch further claims in his motion to vacate that his appellate counsel (Attorney Minns) failed to adequately argue two separate issues on direct appeal -- namely, the challenges to the sentencing court's calculation of tax loss and the imposition of the sentencing enhancement for obstruction of justice. (Pet'r's Mem. 23; Reply 8-9.) He cites the First Circuit's characterization of each of these challenges as "undeveloped" as evidence of this ineffective assistance on appeal. This claim likewise fails.

To establish ineffective assistance of appellate counsel, a defendant "must first show that his counsel was objectively unreasonable." Smith v. Robbins, 528 U.S. 259, 285 (2000). As applied to appellate counsel, that standard is difficult to meet because, to be effective, "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." Id. at 288. Even if a defendant succeeds in making that showing, he must still "show a reasonable probability that, but for his counsel's unreasonable failure to [raise a particular issue], he would have prevailed on his appeal." Id. at 285.

Here, the short answer is that the grounds that Hatch contends his appellate counsel should have asserted more forcefully were ultimately rejected by the Court of Appeals on the merits, as discussed infra. See Hatch, 514 F.3d at 167-68. Thus, Hatch has not shown any "reasonable probability" that had counsel more forcefully asserted these grounds, "he would have prevailed on his appeal." Robbins, 528 U.S. at 285.

To the extent Hatch contends his counsel should have challenged Hatch's perjury enhancement on the grounds that it was based upon acquitted conduct (Pet'r's Mem. 23), the argument goes nowhere. It has long been established that a sentencing enhancement may be based on conduct of which a defendant was acquitted if it is relevant to offenses for which the defendant has been convicted. See United States v. Gerhard, 615 F.3d 7, 34 (1st Cir. 2010) ("[A]cquitted conduct, if proved by a preponderance of the evidence, . . . may form the basis for a sentencing enhancement." (quoting United States v. Gobbi, 471 F.3d 302, 314 (1st Cir. 2006))). Moreover, as the Court of Appeals noted, the sentencing court found that much of Hatch's perjurious testimony related to the tax counts on which he was convicted and false statements he made to the Probation Office -- rather than to the charges of which he was acquitted. See Hatch, 514 F.3d at 157.

Accordingly, Hatch's claim of ineffective assistance by his counsel on appeal likewise fails.

C.    Calculation of Tax Loss

Hatch claims that in computing his base offense level, the sentencing court improperly relied on the testimony of IRS Agent Pleshaw in calculating the amount of the tax loss from his offenses, and that it should have calculated the loss based on 28% of the underreported gross income.  (Pet'r's Mem. 24-26.) This claim fails for multiple reasons.

First, as the Government argues (Gov't's Mem. 29), this claim essentially concerns the district court's application of the Guidelines and as such, it constitutes a nonconstitutional, nonjurisdictional claim that is not appropriate for disposition in a § 2255 motion to vacate.  See Knight, 37 F.3d at 774. Second, Hatch raised substantially the same argument on direct appeal, and it was rejected by the First Circuit, which noted that it was "meritless."  Hatch, 514 F.3d at 167.  Thus, he is procedurally foreclosed from bringing it here.  See Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1994) ("issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion" (quoting Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967))).[16]

_____

[16]  Hatch's related contention that the Court improperly refused to allow his accountant, Dan Urso, to testify regarding

-25-

Even if this Court could address the merits of this claim, it would still fail. The pertinent Guideline, USSG §2T1.1(c)(1), provides that for Hatch's offense, "the tax loss shall be treated as equal to 28% of the unreported gross income . . . unless a more accurate determination of the tax loss can be made." (Emphasis added.) As noted previously, at trial Agent Pleshaw provided a detailed explanation of the amount of tax Hatch would have owed for each of the omitted sums, had they been included, using charts to illustrate his points. (See Trial Tr.-V 75-109.) The sentencing court's finding that the amount of the tax loss exceeded $400,000 was fully supported.

The sentencing court's rejection of Hatch's argument that his tax liability to the federal government somehow should have been offset by taxes which either he or SEG owed to the Malaysian government was likewise correct. (Sent. Tr. 14-20.) In the instant motion, Hatch sets forth no legal basis in support of his position regarding the Malaysian taxes, or any facts showing that Malaysian authorities have sought, or are actively seeking, a tax payment from Hatch, or that Hatch has ever paid such taxes.

---

certain sentencing issues was also raised in his direct appeal, and the Court of Appeals determined that there was no error. See Hatch, 514 F.3d at 166-67. It likewise may not be addressed here.

In short, Hatch's claims concerning the calculation of his tax loss at sentencing must be eliminated.[17]

D.    Obstruction of Justice Adjustment

Hatch also claims that the sentencing court erred in imposing a two-level obstruction of justice adjustment based on his perjurious testimony and untruthful statement to the Probation Office.  He contends that many of the instances of perjury cited by Judge Torres at sentencing related to conduct for which he was acquitted or were otherwise mistaken. (Pet'r's Mem. 28-40.)

This claim encounters the same procedural hurdles as Hatch's tax loss claims.  Because it concerns an application of the Guidelines, it is a nonconstitutional, nonjurisdictional claim and not appropriate for disposition in a § 2255 motion. See Knight, 37 F.3d at 774.  The claim was also addressed and rejected by the First Circuit on direct appeal and is therefore likewise precluded in this proceeding.  See Singleton, 26 F.3d at 240.

Even if addressed on its merits, the claim fails.  A review of the record reveals that Judge Torres provided numerous examples of Hatch's false testimony to justify the enhancement,

_____

[17] This Court is mindful that Hatch has initiated proceedings in the United States Tax Court, and that those proceedings remain pending.  Those proceedings, and the arguments made by Hatch therein, do not change this Court's determination of the instant motion to vacate.

including his statements concerning his other 2000 income and promises that SEG would pay the taxes due on his *Survivor* winnings -- conduct for which Hatch was convicted -- and his false statements to the Probation Office. (Sent. Tr. 48-53, 57-60), and the First Circuit noted as much.[18]

Apart from this, Hatch merely repeats the same arguments his counsel made at sentencing, which were rejected by Judge Torres and are rejected here. The claim fails.

E.   Claim of "Free-Standing Innocence"

Finally, Hatch asserts a generalized claim of "freestanding innocence," in which he provides general social commentary and asserts that he is, and has been, the subject of a malevolent and vindictive prosecution. (Pet'r's Mem. 7-8, 41; Reply 1-5; Supp. Mem. 3-4.) This claim is nothing more than a reiteration of Hatch's denial of guilt and his unfounded assertions that he

---

[18] The Court of Appeals noted that the sentencing court catalogued many instances in which Hatch had committed perjury, noting that the list was "a pretty long one" and included lying on the stand about his failure to disclose the income which formed the bases for the charges on which he was convicted and about his alleged failure to read the letter drafted by Wallis regarding the hypothetical Exhibit One which he then submitted for his tax return. The court further detailed false statements Hatch had made to the Probation Office concerning his assets. Hatch did not raise the acquitted conduct theory below and has an insurmountable hurdle here to show any error, never mind plain error.

Hatch, 514 F.3d at 168.

was somehow the victim of an anti-gay (or other) bias on the part of government prosecutors, the jury and even the Court. These assertions are totally without basis and merit little discussion. Hatch has produced no evidence that sexual orientation was in any way a factor in his prosecution for tax evasion and other offenses. Indeed, this Court notes that Hatch's acquittal on seven of ten counts by the jury contradicts this claim of bias.

Hatch's approach appears to be that if he reiterates long enough and loud enough his misguided belief that he is innocent of his tax offenses, his claims may somehow be deemed true. He is mistaken. As the First Circuit noted, the record contains compelling evidence of Hatch's guilt on the offenses for which he was convicted. See Hatch, 514 F.3d at 152-68. Further, this Court's review of the record shows that Hatch received fair and impartial treatment throughout all phases of his criminal proceedings.

This Court further notes that, contrary to Hatch's contention, the ongoing negotiations between Hatch and the IRS concerning the precise amount of taxes owed for the years in question -- including the pending proceedings before the Tax Court -- in no way draw his conviction into question. It would be one thing if Hatch had reported all of his income in his original tax filings and then attempted to negotiate with the

IRS over the amount of taxes due on such income; it is another thing entirely to willfully omit, as Hatch did here, income from not only his *Survivor* winnings but also his radio appearances and other sources and then, after the IRS learns of the omitted income items, expect to belatedly negotiate the amount of tax due, without any criminal repercussions. The fact that Hatch may be presently cooperating in the pending Tax Court proceedings (as indeed he must) does not excuse or expunge his criminal conduct in connection with filing of his original tax returns for the years in question.

The Court has considered all other arguments raised by Hatch, and finds them all to be without merit. In sum, unlike the taxpayer himself, none of Hatch's § 2255 claims survive.

III. Conclusion

For all of the foregoing reasons, Hatch's motion to vacate sentence is denied and dismissed.[19]

---

[19] This Court is mindful that it has recently found Hatch to have violated the condition of his release requiring him to file amended tax returns and pay taxes owing, for tax years 2000 and 2001. As a result, he was sentenced to further imprisonment for nine months, followed by 26 months of supervised release. This Court further imposed new special conditions of release, pursuant to which Hatch: (1) is required to pay 25% of its gross income towards his tax liability for 2000 and 2001, subject to a refund of payments that may exceed the tax amount found to be owed as a result of any Tax Court proceeding; and (2) may not travel outside of the United States. (See Judgment 4, Mar. 14, 2011, ECF No. 162.) These developments do not affect the resolution of the instant § 2255 motion.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA), because Hatch has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Hatch is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. <u>See</u> § 2255 Rule 11(a).

SO ORDERED:


*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  May 9, 2011